## BALDWIN a. KIMMEL.

*New York Superior Court; General Term, July, 1863.*

MARRIED WOMAN.—ARREST.—SEPARATE PROPERTY.—FORM OF JUDGMENT AND EXECUTION.—ACTION ON JUDGMENT.—PROOF OF SERVICE OF SUMMONS.—JURISDICTION.

Sections 274 and 287 of the Code, as amended in 1862, leave the liability of a mar-ried woman alone to be tried in an action against her, and postpone the deter-mination of the mode of satisfying the amount recovered until the execution. The judgment does not cease to be *in rem*, although formally *in personam*, it is only to be enforced against a particular kind of property.[*]

It is still necessary, in an action against a married woman, to allege in the com-plaint the facts creating her peculiar liability for an act relating to her separate estate, or relating to trade carried on by her for her own benefit.[†]

A married woman cannot be arrested in a civil action.[‡]

[*] Contra, Young a. Gori (13 *Ante*, 13, *note*) ; Thompson a. Sargent (15 *Ib.*, 452) ; Aitken a. Clark (*Ante*, 328, *note*).

[†] Compare Coster a. Isaacs (*Ante*, 328).

[‡] In SCHAUS a. PUTSCHER (*New York Superior Court; Special Term, September*, 1863), it was *Held*, that an application for an order of arrest cannot be granted if it ap-pears, or is conceded, that the defendant proceeded against is a married woman.

In all cases of a judgment against a married woman, it should be expressly stated therein that the amount is "to be levied or collected out of her separate estate, and not otherwise," and the execution should follow the judgment in its terms.[*]

A mere absolute judgment *in personam* against a married woman, recovered prior to 1862, is not sufficient to entitle the creditor to sue her thereon, and recover a judgment against her separate property. The creditor must also establish, at least, that the original cause of action was such as to entitle the plaintiff to a judgment against the separate estate of the defendant.

---

Bosworth, Ch. J.—This is an application *ex parte* for an order of arrest for assault and battery. It is conceded that the defendant is a married woman, though the affidavit does not state whether she is or not.

Before the Code, a married woman could not be held to bail on such an action, though the husband might, and might be compelled to give bail for both. (*Grah. Pr.*, 127.)

The Code has not changed the law on this point. (Solomon a. Naas, 2 *Hilt.*, 179.)

Chapter 90 of the Laws of 1860, and chapter 179 of the Laws of 1862, do not profess to touch this question.

The Law of 1860 declares that no bargain or contract of a married woman in respect to her separate property, or in or about carrying on any trade or business, under the statutes of this State, shall bind her husband, or render his property liable therefor. (*Laws of* 1860, 159, § 8.)

His liability for her, and her exemption from liability to be held to bail in an action, therefore, are not affected by these statutes. (*Laws of* 1862, 344, § 4; and 345, § 5.) The application must be denied.

[*] In Moncrief a. Ward (*New York Common Pleas; Special Term, May*, 1863), it was *Held*, that an execution against a married woman, to compel the payment of costs, may be enforced against her separate estate, whether it contains a direction to that effect or not; and that the Court of Common Pleas has power to enforce collection of a judgment against a married woman, whether that power be given by section 287 of the Code, or not.

The case came up on motion to set aside the execution.

Brady, J.—The Code (§ 114) provides that, when the action concerns her separate property, a married woman may sue alone. The act of the Legislature (*Sess. Laws*, 1860, 157, ch. 90), by sect. 7, enlarges this right of a married woman to sue. She may also maintain an action in her own name against any person for damages to her person or character, and the intent seems to have been to assimilate the forms of procedure against her to those against a feme sole, where she could be sued at all. (Barton a. Beer, 35 *Barb.*, 78; S. C., 21 *How. Pr.*, 309.)

Having the right to sue, the power must be employed *cum onere*. The statute awarding costs does not exempt a married woman, either as plaintiff or defendant, from the payment of costs when unsuccessful. There is no just reason why she should be thus exempted. Having the status of a feme sole in the courts, if she fail in her action it would be unjust to compel her adversary to resort to extraordinary modes to collect his costs. It cannot be that the Legislature intended this. It is true that, until the amendment of the Code (§ 274) in 1862, the Legislature did not in express terms provide that costs could be recovered against her, but

The jurisdiction of a court to render a judgment, allowed to be impeached fourteen years after its entry, by proof that process was not in fact served on the defendant.

A promise to pay a judgment does not preclude the defendant from showing that the court was without jurisdiction to render it, for want of service of process, nor is it any evidence that process was in fact served.

## Appeal from a judgment.

This action was brought by Charles N. Baldwin, upon a judgment recovered in this court, in 1849, by Joshua P. Humphreys and another, against the defendants, Elizabeth C. Kimmel and Alexander F. Kimmel, for $169.45.

such was the effect of the statutes then in existence, as I interpret them. That amendment merely declared the necessary legal conclusion from the existing statutes, no class of suitors, as already suggested, having been excepted from them. The execution to compel the payment of such costs must be enforced against her separate estate whether so directed or not. It cannot be employed against the property of another person *per se.*

If the judgment-creditor claims that the husband is liable, he must collect the judgment in some other mode against him, although I think there is no force in the suggestion that he is or could be liable, even though the action were commenced prior to the amendment of section 274 (*supra*), which exempts him from liability. Entertaining this view of the question presented on this motion, it may not be necessary to consider what bearing sect. 274, as amended, has upon it, but I think it better to express my views on that subject. When the costs accrued on this case, the act of 1862 (*supra*) was in force, and it applied as well to existing suits as to those brought after its passage, inasmuch as the right to costs is created by statute, and wholly depends upon it, and that right does not become fixed until the termination of the action, and inasmuch, also, as it is competent for the Legislature to abolish the allowance which was provided at the time the suit was commenced. (Supervisors of Onondaga *a.* Briggs, 3 *Den.*, 173 ; Van Valkenburgh *a.* Van Alen, 1 *How. Pr.*, 86 ; Goodenow *a.* Livingston, *Ib.*, 232 ; Holmes *a.* St. John, 4 *Ib.*, 66 ; Larmon *a.* Aikin, 4 *Hill*, 591.) Having that power, they could undoubtedly create an allowance in cases where none was granted ; and it follows that, whether the question under consideration is to be determined on the statute as to costs in existence when the action was commenced, or at its termination, the defendant is entitled to a judgment for costs. The provision of section 274 of the Code, as amended (*supra*), giving the Supreme Court jurisdiction in any proceeding to enforce the judgment for costs, does not deprive this court of the power to collect it by its process of execution.

This is manifest from the amendment of section 287, which provides that an execution may issue against a married woman, with directions, however, that the levy and collection of the amount of the judgment against her be made out of her separate property. An execution cannot be strictly termed a proceeding to enforce the judgment, within the meaning of section 274. The judgment, it is therein declared, is to be levied and collected out of her separate estate, and, as we have seen, an execution may issue for that purpose. There being no restrictive language in section 287, the execution can be issued from the court awarding the judgment.

The answer of the defendant Elizabeth consisted of a denial of the allegations in the complaint, an averment that no summons in the original action had been served on her, and that at the time of the alleged recovery of said judgment, she was, and still continued, a married woman, the wife of the defendant Alexander. The action was referred to Hon. Murray Hoffman, as sole referee, to hear and determine. The judgment in 1849 was upon a promissory note. The complaint in that action did not seek to charge her separate estate; it was not alleged in it that the note was given for E. C. Kimmel's benefit, or that of her separate estate, or that she had any separate estate. It was admitted on the trial in this action that she was, at the time of the making of the note upon which the judgment was recovered, and at the time of the recovery of the judgment, and still is, the wife of the defendant Alexander F. Kimmel. Plaintiff had judgment against the defendant E. C. Kimmel absolutely, who appealed therefrom.

*D. Noble Rowan*, for the appellant.—I. The appellant, by reason of her coverture, was not liable on the note upon which the original judgment was recovered. That contract was, as to her, void. (Yale *a.* Dederer, 18 *N. Y.*, 265; 22 *Ib.*, 450.)

II. The appellant has not waived this defence by omitting to plead in the former action. 1. A married woman, though she had in equity a power of disposing of her separate estate, is incapable of making a contract personally binding upon her, either at law or in equity. The statutes of 1848 and 1849 have not changed the law as respects her capacity. (Yale *a.* Dederer, *supra.*) 2. In accordance with this doctrine, her promissory

The Legislature has not taken away by express enactment any power of the courts on that subject, and the intendments, as matter of construction, are in favor of jurisdictions already had. It may have been the purpose of the Legislature to confer upon the Supreme Court exclusive jurisdiction where the separate estate was so situated that it could not be reached by execution, making some proceeding necessary to its appropriation other than the issuing of an execution. Whether this be so, or not, I am satisfied that this court has the power to collect a judgment against a married woman for costs by execution, whether that power be based upon section 287, or not. The execution, however, was perhaps erroneous in form, not directing, as it ought to have done, the collection of the amount stated in it out of the separate estate of the plaintiff. But the error is not of any importance. This motion will therefore be denied, without costs, and the defendant be permitted to amend his execution in the respect named.

notes, bonds, and other obligations, have uniformly been held void. (2 *Kent's Com.*, 164; 2 *Story's Eq. Jur.*, §§ 1399–1401; Gardner *a.* Gardner, 22 *Wend.*, 526.) And a confession of judgment by her is void. (Wotkyns *a.* Abrahams, 14 *How. Pr.*, 191; Brittin *a.* Wilder, 6 *Hill*, 242.) 3. It is claimed, however, that a feme covert can do that indirectly which the law does not permit her to do directly. This position is entirely at war with principle, and unsustained by authority. 4. Coverture incapacitates from any and every contract, except such as arise from the *jus disponendi*. A contracting capacity is required, in order to waive a right; and it must be borne in mind that the personal contracts of a married woman are not voidable merely, but void. (1 *Pars. on Cont.*, 286, 359, 362, *note*.) The cases relied upon by the respondent fall far short of sustaining the referee's decision in this case. There is no case wherein an attempt by a plaintiff to enforce judgment *in personam* against a married woman has been aided by the courts.

III. Formerly, a debt in a case like this might be relieved upon a writ of error *coram nobis* (*Tidd's Pr.*, 1135, 1136): and though this was not strictly a writ of right, yet the court could not refuse the writ, when error in fact outside the record plainly appeared. (Higbie *a.* Comstock, 1 *Den.*, 652.) Now the writ of error is abolished, and the only manner of reviewing a judgment is by appeal. (*Code*, § 323.) And no appeal can be had from a judgment by default. (Pope *a.* Dinsmore, 8 *Abbotts' Pr.*, 429; Stewart *a.* Morton, *Ib.*, 429, *note*.) And no way is provided for the assignment of errors in fact. The remedy by motion is addressed to the discretion of the court. (Genet *a.* Dusenbury, 2 *Duer*, 679.) The Code is not to be construed so as to deprive the defendant of any rights she would have had before; but, having abolished the former remedy, it leaves to her the privilege of asserting her rights by answer. (*Code*, § 150.)

IV. The complaint sets forth a personal judgment, and asks for a judgment of the same kind. It is defective in not alleging that the debt (the judgment) was contracted for the benefit of her separate estate,—or that she has any separate estate. (Dickerman *a.* Abrahams, 21 *Barb.*, 551.) The amendment of 1862 to section 274 of the Code does not affect or alter the rules of pleading. It only relates to the form of the judgment.

V. We have assumed that the summons in the original

action was served on the appellant. We insist, however, that there was no such service, and that the referee should have found for the appellant on this ground. 1. This defence can be set up, and is available in this action. It goes to the question of jurisdiction, and is always held a good defence. (Starbuck *a.* Murray, 5 *Wend.*, 148; Noyes *a.* Butler, 6 *Barb.*, 613; Dobson *a.* Pearce, 12 *N. Y.*, 156, 164.) 2. This is a case where a court of equity would undoubtedly give relief, and where we can avail ourselves of our equitable rights by answer. (Dobson *a.* Pearce, *supra.*)

*Reuben W. Van Pelt*, for the respondent.—I. Coverture, like infancy, usury, the Statute of Limitations, must be pleaded; if not, it will be deemed waived. It is not competent, even on appeal from a judgment, to raise for the first time the question of coverture, when it has not been pleaded, although the evidence shows the facts to have existed. (Castree *a.* Gavelle, 4 *E. D. Smith*, 425.)

II. The judgment is not void, but is a valid and binding judgment until reversed, and no proceedings whatever have been taken to vacate or reverse the judgment in question. (Genet *a.* Dusenbury, 2 *Duer*, 679.)

III. No fraud or unfair means were practised against the defendant to recover the original judgment, and she has acquiesced in it for fourteen years. There can scarcely be a doubt but that Mrs. Kimmel was served with the summons and complaint, and if any irregularity existed in the manner of entering and the form of the judgment against her, it should have been corrected by motion. Mere irregularities do not render judgments absolutely void. (Ingersoll *a.* Bostwick, 22 *N. Y.*, 425.)

By the Court.—Robertson, J.—The defendant is a married woman, and the present action seems to have been brought against her, in order to obtain the benefit of the amendment of section 274 of the Code, passed in April, 1862,—whereby judgment was allowed to be given against a married woman for costs and damages, to be levied out of her separate estate,—and also that of sect. 287,—authorizing the issuing of execution against a married woman, to be levied out of her separate estate. These amendments, which extended the provisions passed in 1853, relative to contracts of a wife before marriage (*Laws of*

1853, 1057, ch. 575), to all her liabilities, left the right of action against, or the liability of, a married woman alone to be tried in the action, and postponed the determination of the mode of satisfying the amount recovered, until the execution. The judgment did not cease thereby to be *in rem*, although nominally *in personam*. It was only to be enforced against a particular kind of property.

These amendments would, of course, not do away with the necessity of alleging in the complaint, and showing, the liability of a married woman for an act relating to her separate estate, or trade carried on by her under the act of 1860 (*Laws of* 1860, 157, ch. 90, § 7; Dickerman *a*. Abrahams, 21 *Barb.*, 551), or, generally, whatever was necessary to show her liability. A woman may be arrested for a wilful injury to person, character, or property, and therefore judgment may be obtained against her for damages for such misconduct (*Code*, § 179); but this has been held not to apply to married women (Anonymous, 1 *Duer*, 613; S. C., 8 *How. Pr.*, 134; Schaus *a*. Putscher, *Ante*, 353, *note*), and no such remedy could be enforced against one.

The amendments of 1862, therefore, leave undetermined several important questions: Whether a married woman, against whom a judgment has been obtained, may be subjected to supplementary proceedings as regards her separate property; Whether, on a judgment against a married woman for a tort, her separate estate may be levied on; Whether she can give a confession of judgment (see Wotkyns *a*. Abrahams, 14 *How. Pr.*, 191; Person *a*. Warren, 14 *Barb.*, 488); And whether a new action can be commenced on a judgment against her for any cause, so as to enable the plaintiff to make her separate property liable on execution. In other words, whether a married woman is to be considered *in all respects* as a feme sole in regard to her liability and the judgment in an action against her, except as to the mode of enforcing such judgment.

At common law, a married woman could have no personal property, except choses in action not reduced to possession, which could not be levied on: her separate personal estate, in equity, could not be reached on a mere judgment: on such judgment, therefore, against her personally, only her real estate, while her husband lived, or her personal estate acquired or reduced to possession after his death, could have been reached by execution.

A fair interpretation of the two amendments of sections 274 and 287, in 1862, seems to require that in all cases of a judgment against a married woman, it should be expressly stated therein, that the amount is " to be levied or collected out of her separate estate, and *not otherwise*," as in judgments formerly against executors or administrators; the execution, of course, should follow the judgment in its terms. As a plaintiff, therefore, can hereafter get no more or less by a second judgment upon such a judgment hereafter obtained, than by the latter itself, he probably would be entitled to sue upon it in all cases.

At the time of the recovery of the judgment sued upon in this case (August, 1849), however, it depended upon the form of the judgment, whether only the real estate of the defendant could be levied on, and all remedy against her personal property must be postponed until her husband's death, or not: it was, in form, a general judgment *in personam*, to be enforced by all the means by which such a judgment could be enforced, but by no other. The only judgment which can now be rendered is one to be enforced against the separate property of the defendant. In order to warrant that, in this case it should have been alleged and shown either that the original cause of action on which the first judgment was obtained, or that such judgment itself, warranted it: a mere absolute judgment *in personam*, which could not have been enforced against the defendant's personal property until her husband's death, and never could have been enforced against her separate estate before the change in the law, would not warrant such a new judgment. All contracts or acts of married women, which would in any way make them liable, would, if made after the passage of the amendatory statute of 1862, subject their separate estate, and it only, to the provisions of that statute. In order to obtain the benefit of the change in the law by a judgment to be enforced against the separate property of the defendant, the plaintiff was bound to establish, at least, that such separate property could have been reached on such original judgment, when not so expressly declared in it ; in other words, that the original cause of action was such, as to have entitled the plaintiff to a judgment against the separate estate of the defendant, had the law been the same as now: otherwise, the effect of the amendments of 1862 would be to allow

the plaintiff to reach property on the faith of which the original liability was never incurred; which could not then have been applied to its satisfaction, but which the Legislature now, by a species of confiscation, is presumed to have intended so to apply: this would strip married women in this State of all vested rights under deeds of trust in their favor; an intention not to be presumed, even if the act itself were constitutional. As, therefore, the judgment was obtained before the passage of the act of 1862, and the pleadings in the action in which it was recovered show only that it was obtained on a promissory note claimed to be made by the defendant, the plaintiff was bound to establish, that it was, when made, binding upon her separate estate, before he becomes entitled to a judgment to reach it now: which is the only judgment he can get, the language of such amendment being, "out of her separate estate, and *not otherwise*."

The decision of the referee, giving judgment therefore against the defendant, without proof that her separate estate was liable, or that the liability arose since April, 1862, was erroneous, and ought to be reversed for that reason alone.

But the original judgment was only against E. C. Kimmel and Alexander F. Kimmel: in the complaint therein, it was alleged that *E. C. Kimmel* made the note sued on: the affidavit of service of the complaint and summons was upon *E. C. Kimmel* only: nothing appeared on the record to show that Elizabeth C. Kimmel was the defendant intended, or that she was a married woman: there is no evidence in this case to identify the present defendant with the *E. C. Kimmel* mentioned in such original action as defendant, or with the person served with the summons or complaint therein: the defendant denies in her answer in this action upon the judgment, and denied in her testimony, any such service, and, as well as her husband, testified to facts showing its exceeding improbability. No evidence was offered to contradict such testimony, except a promise by the defendant to pay such judgment, which does not conflict with it: such promise, if supported by a sufficient consideration, might warrant a new action, but would not make a judgment without jurisdiction regular, or prove that any paper had been served on the

defendant: she may have made the note, and thought herself honorably bound to pay the judgment, but the promise was no admission of a legal liability or regularity in the judgment. In the absence of any conflict of evidence, the defendant's testimony established that she was not served; which either made the judgment void for want of jurisdiction, at least as regarded her, or disproved her identity with the person made defendant by service. (Starbuck a. Murray, 5 *Wend.*, 148; Noyes a. Butler, 6 *Barb.*, 613; Dobson a. Pearce, 12 *N. Y.*, 156.) For this reason, also, the judgment was erroneous.

Upon the foregoing principles, the testimony to prove the consideration of the original note was admissible, in order to show that the defendant's separate estate was not liable, and was improperly excluded.

The judgment must be reversed, the order of reference vacated, unless the parties consent to its standing, and a new trial had, with costs to abide the event.

BARBOUR, J., concurred.

WHITE, J.—A judgment was recovered in August, 1849, by Joshua P. Humphreys and Edwin B. Humphreys against E. C. Kimmel and Alexander F. Kimmel, upon a promissory note, made by E. C. Kimmel to the order of, and indorsed by, Alexander F. Kimmel. The judgment was recovered by default, and the judgment-roll and proceedings are in the form usual upon judgments by default in such cases, except that the affidavits of service of the summons and complaint on the defendants is not made by the sheriff, and it does not state that the person making the service knew either of the persons served to be either of the persons mentioned or described in the summons as a defendant therein; nor does it state that a copy of the summons or complaint was left with either of them.

The judgment came by assignment to Baldwin, the above-named plaintiff, who, in 1862, brought the present action upon it against the above-named defendants, Elizabeth C. Kimmel and Alexander F. Kimmel, alleging, in the complaint, the recovery of the above-mentioned judgment in 1849, that the defendant Elizabeth C. Kimmel sued in this action is the same person against whom the judgment was recovered in

1849 by the name of E. C. Kimmel, that said judgment of 1849 remains in full force and effect, and was duly assigned to the present plaintiff Baldwin, by whom it is now owned; and thereupon judgment is demanded in the complaint against the defendant for the full amount of the original judgment, with interest.

The defendant Elizabeth C. Kimmel was alone served with the summons and complaint in the present action, and alone answered, denying in her answer every allegation of the complaint; and further denying that she had been served with the summons and complaint in the action of 1849, and also controverting the allegation that she was the person intended to be described as defendant by the name of E. C. Kimmel in that action, and alleging that at the time of the recovery of the judgment in 1849 she was, and is yet, a married woman, the wife of said Alexander F. Kimmel; and further denying any indebtedness to the Humphreys upon which her separate estate could be charged.

The cause was referred, and, upon the trial before the referee, the judgment-roll of the judgment of 1849 was read in evidence, under exceptions taken by the defendant; such exceptions alleging that the judgment was void: *first*, because it is a judgment *in personam* against a married woman upon a promissory note made by her during coverture; and, *secondly*, because the affidavit of service of the summons and complaint is insufficient.

Proof of the assignment of the judgment to the present plaintiff was also made.

The defendant Elizabeth C. Kimmel testified, on her own behalf, that she was the wife of the defendant Alexander F. Kimmel, and was so at the time of the making of the note upon which the judgment of 1849 was obtained; that she was never served with the summons and complaint in the action of 1849, and could not have been served at the time stated in the affidavit of service annexed to the roll,—namely, June 18, 1849,—because, at that time, and for many days previously, and for many weeks afterwards, she was very sick in bed with cholera, confined to her room from the second week in June until September, 1849, so sick that none but her attendants were permitted to see her, being a part of the time out of her mind;

and the first knowledge that she had of the judgment of 1849 was when the summons and complaint in the present action was served upon her.

Her husband, the defendant Alexander F. Kimmel, was also sworn, and corroborated her testimony.

Edward B. Humphreys was sworn for the plaintiff, and stated "that he had, at least, a dozen conversations with the defendant since the judgment in question, in which he referred to the judgment, and she said she would pay it when she was able."

The defendant Mrs. Kimmel being recalled, stated positively that she never had the conversation with Humphreys which he swore to; that he had not been inside her house, and she had not seen him since 1848.

Defendant's counsel offered to show that the note on which the judgment of 1849 was recovered was given for a debt due from Alexander F. Kimmel to the Humphreys, and not for any indebtedness of the defendant Elizabeth, nor for her benefit, nor for the benefit or upon the credit of her separate estate. The plaintiff's counsel objecting to this testimony, it was excluded by the referee, to which decision the defendant's counsel excepted.

Upon the foregoing testimony, the referee found the existence of the judgment of 1849 unreversed, and in full force and effect, and that the whole amount, with interest, is due and payable; that the plaintiff is entitled to recover the same; that that judgment was obtained upon a promissory note, made by the defendant Elizabeth, and indorsed by her husband, the defendants then being husband and wife; that neither of them made any defence to the action on the note; and that the defence of her then coverture cannot be made available by the defendant Elizabeth in the present action.

The defendant duly excepted to these findings.

The judgment entered upon the findings concluded by adjudging "that the said judgment be enforced and collected according to law out of the separate estate or property of the said defendant, Elizabeth C. Kimmel."

The defendant appeals from the judgment thus rendered against her, and (so far as I can gather from the printed case and points) alleges, as grounds for reversal, in substance:—

*1st.* That the note upon which the judgment of 1849 was recovered was void by reason of the maker's then coverture; and that the plea of coverture is as available to the defendant in this action, which is brought upon the judgment recovered upon the note, as it would have been in the original action brought upon the note itself, if it had been then pleaded.

*2d.* That the present action being brought against a married woman upon a judgment *in personam* recovered against her, the complaint should allege facts showing affirmatively that the debt for which the note was given was an indebtedness of the defendant, incurred for the benefit or upon the credit of her separate estate; and that the complaint not containing such allegations, it does not state facts sufficient to constitute a cause of action, and the plaintiff must therefore fail.

*3d.* That the judgment of 1849 was void as to the defendant Elizabeth C. Kimmel, because the court never had jurisdiction of her,—no summons ever having been served upon her, and she never having appeared in the action.

Upon neither the first or second point above stated should the judgment in this case be reversed, in my opinion.

If the defendant omitted to plead her coverture when she might have done so, and, instead of so pleading, she had suffered a judgment to be taken against her by default, the record of which presents on its face no error of fact or of law (for nothing of her coverture appears upon the judgment-roll), she cannot interpose that plea in an action brought against her upon the judgment. Her only remedy would be to apply by motion or action to open the original judgment, and let her in to defend the suit.

And, as to the allegations proper in a complaint on an action upon such a judgment as that recovered in 1849, all that it is necessary for the plaintiff to allege in the complaint is the fact of the present existence of the judgment, unreversed and unsatisfied. It is not necessary to go behind it, and make allegations respecting pre-existing matters which that judgment must be presumed to have disposed of, and respecting which it is, so long as it stands, a complete and conclusive finality.

A question respecting the connection or relation of the original judgment to the defendant's separate property, no more arises in such a case than it would in a case in which a married

woman should be sued upon a promissory note made by her before marriage, while a feme sole; and it need no more be stated or referred to in the complaint in one case than in the other.

The direction in the judgment in this action, "that it be collected and enforced out of the defendant's separate estate," is no otherwise objectionable than that it fails to adopt with sufficient literal accuracy what is now the authorized form of a judgment against a married woman in every case and for any cause (*Laws of* 1862, 849, ch. 460),—the object of this statute being, as I suppose, merely to give more full expression or effect to the principle, that the wife's debts can be made chargeable only upon her own separate estate, and the husband's debts only upon his separate property.

But, on the third of the above points, I think that the testimony, as it is given in the case, preponderates irresistibly in favor of the conclusion that the defendant was not served with a summons or complaint in the original action. All the proceedings in that action should, therefore, be regarded as to her *coram non judice*, and the judgment as to her absolutely void.

Upon that ground, therefore, I concur in the conclusion that the judgment in the present action must be reversed, and a new trial ordered, with costs to abide the event; the order of reference to be vacated, unless the parties stipulate that it shall remain.