# N. Y. SUPERIOR COURT.

## Frederick W. Muser and others agt. Julia Miller.

*Husband and Wife — Arrest of married women — May be held upon an order of arrest in all cases the same as if she were unmarried — Code of Civil Procedure, sections 553–450.*

The reason of the common-law rule in regard to the joinder of the husband with the wife has wholly ceased to exist; and the rule itself has been abrogated in all cases, of torts as well as contracts, affecting the separate property of a married woman, or connected with or arising from the management or control of her business; and the exemption of a married woman from arrest, which sprang solely from the reason of the rule, has ceased in all cases in which the law expressly authorizes the arrest of females in general terms.

*Special Term, June,* 1883.

Mrs. Julia Miller is now in Ludlow street jail, upon an order of arrest in a suit brought to recover the value of a large quantity of laces stolen from the firm by one of its employes, and which it was claimed Mrs. Miller received, knowing that it was stolen property. Motion is made to vacate the order upon the ground that she being a married woman cannot be held upon an order of arrest in a civil action.

*D. M. Porter,* for plaintiffs.

*Charles S. Spencer,* for defendant.

Freedman, J. — The plaintiffs have made out a *prima facie* case against the defendant Julia Miller which has not been overcome by the proofs adduced by her to such a degree that I can determine the merits. The testimony of James J. Madden, the thief, and Fannie Lewis, the receiver, is corroborated in several particulars, and especially by the circumstances that some of the stolen goods have been shown beyond controversy to have been in the possession of the defendant.

Her statement by affidavit, that she paid a fair value for the goods she did purchase from the receiver, cannot overcome the case made against her, because from the fact that she was a dealer in laces since 1877, and a purchaser from leading merchants in New York, and had even received goods on consignment from the plaintiffs in this action, the inference may be drawn that her statement is not true, and that she knew at the time that she was getting the goods very much below their intrinsic as well as market value. Without going into particulars it is sufficient to say that much of what the defendant shows may be true, and yet a *prima facie* case remains against her that she committed at least a willful injury to plaintiffs' property within the meaning of section 553 of the Code of Civil Procedure. By the affirmance of the court of appeals (64 *N. Y.*, 625) of *Duncan* agt. *Katen* (6 *Hun*, 1) it is now settled that in such a case a willful injury to property does not mean an injury merely to the thing itself but an injury to the owner's right in and to the thing.

The case at bar, therefore, falls within that class of cases in which the rule prevails that the court will not try the merits upon affidavits. This being so the order of arrest cannot be vacated unless the defendant's point is well taken, that because she is a married woman no order of arrest will lie against her under any circumstances.

At common law a married woman could not be held to bail in an action founded upon her personal tort, though the husband might be held and might be compelled to give bail for both (*Grah. Pr.*, 127; *Anonymous*, 1 *Duer*, 613; *Schaus* agt. *Putscher*, 16 *Abb. Pr.*, 353, *note*). That the Code in force before the Code of Civil Procedure did not change the rule upon this point was distinctly held in *Solomon* agt. *Waas* (2 *Hilt.*, 179).

The necessity for holding the husband arose from the legal effect of the marriage relation. At common law the husband and wife by marriage became one person in law, that is, the very being or legal existence of the woman was suspended

during the marriage, and incorporated or consolidated into that of the husband. But the necessity for such joinder was not, strictly speaking, because the husband was absolutely liable, but it grew out of the fact that a suit could not be maintained against a wife alone during coverture (*Bishop cn Married Women*, sec. 254).

Under the statute of this state any married woman may take and hold real as well as personal property, separate and apart from her husband, and enjoy the same, and the rents, issues and profits thereof, in the same manner as if she were a single female; and she has express authority to bargain, sell, assign and transfer her separate personal property to carry on any trade or business, and perform any labor or services on her sole and separate account. The power thus conferred to carry on a trade or business includes the ability to make bargains and contracts in relation to it in almost any mode known to the law, and in accordance with the practice of the commercial community, and such bargains and contracts have been held valid against her, notwithstanding her coverture, provided they were made in the course of her trade or business, and as an incident to it. Upon any such bargain or contract she could, since 1860, sue and be sued in the same manner as if she were sole, and the same may be said generally concerning all matters having relation to her sole and separate property.

It was held, however, that these changes by statute did not alter the common-law liability of the husband for the mere personal torts of the wife, but that the rule was changed only in cases of torts committed in the management and control of her separate property (*Baum* agt. *Mullen*, 47 *N. Y.*, 578; *Kowing* agt. *Manley*, 49 *N. Y.*, 192). But even then the husband was held in some cases to be still a necessary party to the action.

Thus the rule as to the necessity of the joinder of the husband with the wife, in a case of tort committed by the wife, remained until the enactment of the Code of Civil Procedure.

Section 450, as originally enacted, read: "In an action * * a married woman appears, prosecutes or defends alone * * as if she was single." In his notes, Mr. Throop states that that section was intended to sweep away all distinctions between a *feme sole* and *feme covert* in respect to suing and being sued, and in *Janinski* agt. *Heidelberg* (21 *Hun*, 439) it was held by the general term of the supreme court that the language used was comprehensive enough to do it.

In 1879, section 450 was amended by adding at the end thereof the further express provision that in any action or special proceeding affecting the separate property of a married woman, it is not necessary or proper to join her husband with her as a party.

Since that amendment it was held in *Fitzgerald* agt. *Quann* (62 *How.*, 331) that it is now no longer necessary or proper to join the husband as a defendant in an action against the wife for her personal tort, though such tort was wholly unconnected with the wife's separate estate or the management or control of her business, and that the reason of the rule in regard to the joinder had wholly ceased to exist.

For the purpose of determining the motion before me, it is not necessary to go quite as far. It is sufficient to hold that the reason of the rule in regard to the joinder has wholly ceased to exist, and the rule itself has been abrogated in all cases, of torts as well as contracts, affecting the separate property of a married woman or connected with or arising from the management or control of her business. For it is conceded that the wrongful acts complained of in the case at bar were committed in the course of the defendant's business as a dealer in laces. It follows, then, that, if to the extent stated the reason of the rule has ceased to exist and the rule itself has been abrogated, the exemption of a married woman from arrest which sprang solely from the reason of the rule, must cease whenever the rule ceases, in all cases in which the law expressly authorizes the arrest of females in general terms.

Muser agt. Miller.

In looking for such authority it will be found that section 553 of the Code of Civil Procedure gives the right of arrest during the pendency of the action against any woman in an action to recover damages for a willful injury to person, character or property.

Having already shown that the case made out against the defendant is one which falls within the class of cases specified in section 553, and it appearing that the wrongful acts charged against the defendant were committed by her in the management of her business, she is not entitled to have the order of arrest vacated for the sole reason that she is a married woman. From the examination so far made, it appears that no ground whatever exists for the vacation of the order.

As to reducing the bail, I have also failed to discover any ground upon which the defendant can be relieved. According to some of the testimony, the defendant had all the goods which were stolen from the plaintiffs, and if the jury should under all the circumstances, find such testimony worthy of belief, their verdict will be for an amount which, with interest and costs, will exceed the amount of bail specified in the order. In view of such contingency the plaintiffs have a right to have the bail maintained as originally fixed.

The only relief I can grant is to order an immediate trial of the issues by jury, on·the ground of the actual imprisonment of the defendant.

Motion to vacate order of arrest denied, with ten dollars costs.