PERSON, committee of Fuller, a lunatic, *vs.* WARREN, HAMLIN and BARTLETT.

Under the exception contained in section 113 of the code, an action may be brought by the committee of a lunatic, alone, for the purpose of setting aside an act or deed done by the lunatic while such.

A bond and warrant of attorney, executed by a person who is subsequently found by inquisition to have been, at the time, of unsound mind, so that he was incapable of governing himself or managing his affairs, &c., and a judgment entered thereon, by confession, are not absolutely void, and will not be set aside, unconditionally, where it appears from the evidence that the alledged lunatic was for several years prior to the execution of the bond and warrant permitted by his friends to exchange lands, to buy and sell real and personal property, and to give notes, bonds and mortgages, and there is no notice, fraud, or want of good faith alledged in the pleadings.

But such judgment, and all subsequent proceedings, may be set aside *on terms,* in the discretion of the court.

THE defendant Bartlett and John C. Fuller, the lunatic, executed and delivered to the defendant Warren a bond and warrant of attorney, bearing date the 22d day of February, 1848, by virtue of which the defendant Warren caused judgment to be perfected on the 22d day of February, 1848, for $1300 debt and $16,50 damages and costs. Execution was issued upon the judgment to the sheriff of Erie county, who, on the 29th day of July, 1848, sold certain real estate belonging to Fuller to the defendant Warren, and on the 16th day of September following he sold other real estate owned by said Fuller, to the said defendant Warren. Certificates of such sales were made out, executed and delivered to Warren, and he, on the 23d day of Sept. 1849, assigned the certificates to the defendant Hamlin. Deeds were executed by the sheriff and delivered to Hamlin, the assignee of the certificates. On the 15th of December, 1849, upon proceedings duly instituted, a writ in the nature of a writ *de lunatico inquirendo* was executed, and by the inquisition then taken and returned, John C. Fuller was found to be " of unsound mind so that he was incapable of governing himself or managing his affairs, and had been in that state ever since 1831, without enjoying lucid intervals." On the return of the inquisition, the plaintiff was duly appointed the committee of the person and

estate of Fuller.. The plaintiff's complaint alledged that Fuller, at the time of executing the bond and warrant of attorney, and at the time of perfecting and docketing the judgment, and ever since, had been of unsound mind, and incapable of . governing himself, being a lunatic without lucid intervals, and that the defendant Bartlett improperly influenced him to execute the bond and warrant of attorney; and demanded judgment that the bond and warrant of attorney, judgment and sales be set aside and vacated, or delivered up to be cancelled.

*A. Sawin,* for the plaintiff.

*W. C. Johnson,* for the defendant Warren.

*C. Daniels,* for the defendant Hamlin.

TAGGART, J.   The defendants object to the plaintiff's right to prosecute this action, insisting that the action ought to have been brought in the name of the lunatic himself, and that it cannot be sustained in the name of the committee.

The case of *Petrie* v. *Shoemaker,* (24 *Wend.* 85,) was an action of ejectment in the name of the committee of a lunatic as plaintiff, in which case the court say " The action is wholly misconceived.   It should have been in the name of the *non compos ;* the committee have no estate in the lands.   They are regarded as mere bailiffs acting under the direction of the court of chancery, which has the care and custody of idiots and lunatics, and of their real and personal estate ;" and cite *Shelford on Lunacy,* 179, 180, 339, and 1 *Collinson on Lunacy,* 370, *ch.* 28.

So in the case of *Love* v. *Schermerhorn,* (1 *Hill,* 97,) which was an action by the committee of a lunatic, for money had and received by the defendant to the use of the lunatic, and for money lent and advanced by the lunatic to the defendant, the court say, " It is unnecessary to inquire whether the plea is bad; for the action is misconceived.   It should have been brought in the name of the lunatic.   In *Petrie* v. *Shoemaker,* (24 *Wend.* 85,) we held that the committee could not maintain ejectment on the

title of the lunatic." "The authorities on this subject are uniform, and the action must be brought in the name of the lunatic; and there is no distinction between actions concerning the realty and those relating to the personal estate. The committee is a mere bailiff or servant, and the interest or right of action remains in the lunatic." The learned justice who delivered the opinion cited numerous authorities in support of his opinion, and among others he says " Mr. Shelford says the action must be brought in the name of the *non compos,* whether it be an action of trespass, ejectment, covenant *or of any other kind.*" In the case of *McKillip* v. *McKillip,* (8 *Barb.* 552,) the court say, " The action is improperly brought in the name of the plaintiff as committee of the lunatic. No rule of law is better settled than that a lunatic, by the appointment of a committee, loses none of his estate, rights of property, or rights of action. All suits affecting his person or property must be prosecuted in his name, except those provided for by chapter 112, page 90, of Laws of 1845. That statute, it seems, was passed with direct reference to this settled rule of the common law, and was intended to obviate some inconveniences experienced by authorizing the committee to sue in their own names for any debt, claim or demand transferred to them, or to the possession and control of which they become entitled as such committee. The statute does not embrace an equitable proceeding like this, by which an estate or interest in real estate is sought to be established.

On the part of the plaintiff it is insisted that this rule, as to bringing the action in the name of the lunatic, does not apply to actions brought for the purpose of setting aside an act or deed done by the lunatic while such, but that such action is an exception to the general rule. In the case of *Ortley* v. *Messere,* (7 *John. Ch.* 139,) the chancellor says, " It is not necessary for the lunatic herself to be a party plaintiff with her committee to set aside an act done by her while she was under mental disability." He says also, "The general practice is to unite the lunatic with the committee, as was done in 2 *Vern.* 678; but there does not appear to be any use in it, or any necessity for it, as the committee have the exclusive custody and control of the estate and

rights of the lunatic. The lunatic may be considered a party by his committee." The same rule is recognized in the case of *Gorham* v. *Gorham*, (3 *Barb. Ch.* 24.) The court in that case, in speaking of the decision in the case of *Attorney General* v. *Parkhurst*, (1 *Ch. Cases*, 112,) say, "The decision in that case was probably based upon the principle that the lunatic should not be compelled to stultify himself, and I am not aware that it has ever been overruled. It was therefore properly followed by Chancellor Kent in the case of *Ortley* v. *Messere*."

Aside from the provisions of section 111 of the code, I can perceive no difficulty in determining that this action is properly brought in the name of the committee of the lunatic. It is an action brought for the purpose of setting aside an act or deed of the lunatic, and is therefore within the exception to the general rule respecting actions relating to the real or personal estate of lunatics. Sec. 111 of the code provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 113. Sec. 113 authorizes an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, to sue without joining with him the person for whose benefit the action is prosecuted, and declares that a trustee of an express trust within the meaning of the section shall be construed to include a person with whom or in whose name a contract is made for the benefit of another. This section preserves the right of the committee to sue in cases authorized by the act of 1845, but does not extend such right unless the committee shall be deemed to be "a trustee of an express trust."

I am inclined to think that section 111 of the code has changed the rule. The action is brought for the benefit of the estate of the lunatic. By the appointment of the committee the lunatic "loses none of his estate, rights of property, or rights of action." The committee have no estate in their hands. They are regarded as mere bailiffs, acting under the direction of the court of chancery. The committee is not then the real party in interest, and cannot under the provisions of section 111 prosecute this action.

It remains to be considered whether the plaintiff is within the

exception allowed by section 113. He is not an executor or administrator, or person expressly authorized by statute. This action was an exception to the general rule previous to the act of 1845, and was not included within the provisions of that act. That is the only statute authorizing the committee of a lunatic to maintain an action in his own name as such committee, for the benefit of the lunatic or his estate, and as that confers no authority to bring this action, the plaintiff cannot avail himself of the provisions of section 113, which excepts from the operation of section 111 persons expressly authorized by statute. The committee cannot maintain this action in his own name, unless he is to be deemed " a trustee of an express trust." In the case of *Grinnell* v. *Schmidt*, (3 *Code Rep.* 19,) which was an action in the superior court of New-York, to recover for damage to corn shipped by the plaintiffs, (who were factors,) in their own names, the court say, " It is the duty of the court to apply the words ' trustees of an express trust' to cases like that, and ' mercantile agents and factors,' who according to the usage and custom of merchants do business in their own names but for other parties, are trustees in the strict sense of the term. They are so in fact, and they have always been held liable as such to account in a court of equity." The provisions of section 113 of the code, by this amendment of 1851, were extended to reach such cases as that of *Grinnell* v. *Schmidt*. That amendment provides that " A trustee of an express trust within the meaning of the section shall be construed to include a person with whom or in whose name a contract is made for the benefit of another ;" but it does not extend its provisions so as to include a case like this. Unless therefore the committee of a lunatic is a trustee of an express trust, within the meaning of section 113, the plaintiff must fail in this action.

Bouvier's Law Dictionary defines trusts as follows : " 1st. *Trust* is an equitable right, title or interest in property, real or personal, distinct from its legal ownership ; or it is a personal obligation for paying, delivering or performing any thing, where the person trusting has no real right or security, for by that act he confides altogether to the faithfulness of those intrusted.

Person v. Warren.

This is its most general meaning, and includes deposits, bailments and the like.   In its more technical sense it may be defined to be an obligation upon a person arising out of a confidence reposed in him to apply property faithfully and according to such confidence."   3d.  " Trusts are either express or implied. 1st.  Express trusts are those which are created in express terms in the deed, writing or will.   The terms to create an express trust will be sufficient if it can fairly be collected upon the face of the instrument that a trust was intended."   The same author, under title " Committee," says, when speaking of the committee of a lunatic's estate :  "The committee of the estate is bound to administer the estate faithfully, and to account for his administration.   He cannot in general make contracts in relation to the estate of the lunatic, or bind it without a special order of the court or authority that appointed him."

Jacob's Law Dictionary defines trust as follows : " A confidence which one man reposes in another ;  but as generally used in law, it is a right to receive the profits of land and to dispose of the land itself, in many cases for particular purposes as directed by the lawful owner as pointed out by the settlement, &c. or by that deed of conveyance which created the trust."  In the same book, title " Idiots and Lunatics," III, it is said " The doubt whether the king could grant the custody of an idiot to one, and his executors proceeded upon the probability of the executorship devolving on an infant who being held incapable of managing his own estate, could scarcely be thought a proper person to be intrusted with the charge of the person and lands of another.   The court of King's Bench, did, however, upon an issue directed, adjudge the grant to be good, holding it to be a trust coupled with an interest, of which an infant is capable," and cites 3 *Mod.* 43 ; *Skin.* 177 ; 1 *Vern.* 9.   In the case cited from Vernon, (*Prodgers* v. *Phrazier*,) the point in the case  argued by counsel was *whether the custody of an idiot can by law, be granted to a man, his executors, administrators and assignees.*  And first, a difference was taken and agreed on all hands between the case of an *idiot* and a *lunatic.*   That in the case of a lunatic, it is only a trust in the king, and no profit by law intended him thereby ; but in

case of an idiot it is otherwise, for the king by his prerogative has an interest in the estate of the idiot and the right to the profits thereof.

On application of these principles, it seems to me that the plaintiff is within the exception in section 113. He is a trustee; to him is intrusted the entire care and control of the estate of the lunatic, and although he is a mere servant or bailiff, he is invested with a trust. If a trustee, he is of course trustee of an express trust. He was authorized to prosecute this action, without the provisions of the code, and his right, I think, is preserved by section 113, and the action is therefore properly brought in the name of the plaintiff as committee of the lunatic.

I am satisfied that the evidence in this case fully sustains the finding of the jury, and that Fuller's estate should be relieved from the consequence of his acts, as far as can be done on equitable principles. The inquisition does not (it will be observed) find that "*Fuller was non compos mentis*," nor "a lunatic entirely divested of lucid intervals." It finds "that Fuller was of unsound mind on the 13th December, 1849, so that he was incapable of governing himself or managing his affairs, and had been in that state ever since 1831, without enjoying lucid intervals." In the case of *Blanchard* v. *Nestle*, (3 *Denio*, 37,) it is decided "That mere imbecility of mind in a testator, however great, will not avoid his will, provided he is not an idiot or a lunatic." In a note to that case it appears that the same principle was applied to a deed, in the case of *Osterhout* v. *Shoemaker*, decided at that term but not reported at length. Chief Justice Bronson in delivering the opinion of the court, said: "Our law does not distinguish between different degrees of intelligence. It does not deny to a man of very feeble mind the right to make contracts and manage his own affairs. In the absence of fraud, proof of the mere imbecility of mind in the grantor, however great it may be, will not avoid the deed. There must be a total want of understanding. (*See also Odell* v. *Buck*, 21 *Wend.* 142; and *Petrie* v. *Shoemaker*, 24 *Id.* 85.) In the case of *Jackson* v. *King*, (4 *Cowen.* 207,) the court say: "Prior to our revolution the court of chancery in England entertained juris-

diction in cases of idiocy and lunacy alone. That mere imbecility of mind, not amounting to idiocy or lunacy, was not deemed sufficient to interfere with the liberty of the subject over his person or property. Latterly a different doctrine has prevailed. The court of chancery has entertained jurisdiction in such cases. In the *matter of Barker*, (2 *John. Ch. R.* 232,) the cases on this subject were reviewed. It was considered as founded in good sense and the necessity of the case, for the protection of a numerous class of persons whose minds have sunk under the power of disease or the weight of age, and were liable to become the victims of folly or fraud. This enlarged jurisdiction seems to have sprung up since the time of Lord Hardwick, and as Mr. Maddock observes, (2 *Mad. ch.* 573,) was rather arbitrarily introduced, so much so, that it has more than once been hinted that legislative provision on the subject would be proper. "Without, however, questioning the propriety of assuming jurisdiction in such cases, it may be observed that the doctrine, if well founded, does not prove that a deed fairly obtained from a person who might be a fit subject for a commission in the nature of a writ *de lunatico inquirendo*, could be avoided in a court of law. Indeed the contrary is strongly implied, for the ground of interference is, as Lord Erskine observes, (12 *Vesey*, 455,) to protect a party in his second state of infancy. By such a proceeding the right of a party to contract who is incapable of managing his affairs by reason of partial derangement of mind is taken for granted. The question on the validity of a deed executed prior to a commission of this nature, would not in the least be affected by such commission. It must be shown that the grantor was *non compos*, within the legal application of the term, that it was not partial, but an entire loss of the understanding."

Applying the principle of these decisions to this case, it is quite clear that the bond and warrant of attorney, by virtue of which the judgment sought to be set aside was confessed, were not absolutely void at law, and that taking the evidence on the part of the plaintiff, including the inquisition, as prima facie evidence, there is not sufficient evidence to authorize the court

to pronounce the judgment, and all proceedings under it, and by virtue of it absolutely void. As I before remarked, Fuller should be relieved from the consequences of his acts as far as can be done on equitable principles. It only remains, therefore, to determine whether in this case there is sufficient evidence to authorize a court of equity to set aside the judgment and subsequent proceedings, either absolutely or upon terms.

Fuller was, as the inquisition finds, of unsound mind, and was incapable of governing himself, or managing his affairs; but it appears that from May, 1831, to December, 1849, he was permitted at the instance of his friends to exchange lands, to buy and sell lands, to give notes, bonds and mortgages, if he chose to do so, buy and sell cattle, horses and other stock, and to reap the profits of these speculations until he finally makes an unprofitable contract. Then a commission is issued and an inquisition found, relating back more than eighteen years, by which all his bad contracts are to be set aside, and his good ones enforced. In this case, the defendant Warren executed the note at the request of the friend and protector of the lunatic acting in entire good faith. The defendant Hamlin purchased the judgment against Fuller and Bartlett in good faith. There is no knowledge, or want of good faith, alledged in the pleadings. The court is asked to set aside the judgment, and all subsequent proceedings, and by so doing to sanction the principle that all acts of the lunatic for the space of eighteen years before inquisition found, should be set aside, and he and his friends should have the entire fruits of all the transactions he has engaged in, with entire impunity from the bad consequences of such transactions. It does not appear to me that it is just or equitable to deprive Warren or Hamlin of their security upon the land. I am therefore to determine what, if any, relief can be granted consistently with the rules of law.

The case of *Neil* v. *Morley*, (9 *Vesey*, 478,) is somewhat analogous to this, in some of its characteristics. That was an action brought to set aside an auction sale of property amounting to £3923 and upwards, made in May, 1800. Neil, the plaintiff, who was the purchaser of the property in question, imme-

Person v. Warren.

diately after the conclusion of the sale sold stock, paid considerable sums to the defendant on account, and gave him promissory notes and a warrant of attorney to confess judgment for other sums. He afterwards resold, at a loss, part of the property so purchased. On the 25th of August, 1800, a commission of lunacy issued against him, under which he was found a lunatic from the first of May, 1797, without lucid intervals. The plaintiffs traversed the inquisition, and a verdict was found for the crown. The bill was filed by the lunatic and his committee, praying that the defendant might be decreed to repay to the committee the money paid by the lunatic; that the purchase of the several lots by the lunatic be set aside, the notes be delivered up, &c. The master of the rolls, on giving his opinion, says, "It is impossible to give the plaintiff the relief he prays, or any relief, except upon the ground that he was a lunatic at the time the contract took place. But suppose him to be considered in strictness a lunatic at the time, without lucid intervals, the question is how far the plaintiff, upon that supposition even, is entitled to the equitable interference of this court to restore to him the possession of all the money he has paid in consequence of the contract." After arriving at the conclusion that the defendant was not chargeable with notice of the plaintiff's lunacy, he says, "Then it comes to the mere fact that he was a lunatic. The question with reference to that, is how far, under all the circumstances, this court will interfere to set aside the whole of the lunatic's transactions, supposing them void at law. That will depend very much upon the circumstances, and no general rule can be laid down upon it. *With regard to purchases that have not been completed, and cases in which it is possible to replace the parties,* there is no reason why the court should not interfere to administer its ordinary equity, as it can do that in general in a much better way than a court of law, even supposing that court would consider the mere law of the case in the same way as this court would. But there may be other cases in which the inconvenience would be so great that this court will leave the party to law. The inconvenience of carrying back the finding is extremely great, if that is to be car-

ried through all the legal consequences. Assuming it to be the legal consequence that every act of the lunatic subsequent to that time is absolutely void, nothing can be more inconvenient than for this court to give effect to that legal consequence, setting aside every dealing in the course of his trades, giving an account of all the lost, the parties who have dealt with him to take the chance of the transaction being a losing one and make it good; and the transaction being strictly void, this court acting upon that, and though the parties cannot be, replaced, obliging them to refund though producing the great injustice that they cannot have that for which the money was paid, or cannot have it in the same manner." · And again, " If the plaintiff is right in saying all this is void at law, let him resort to law, and recover it if he can. *But there is no ground for a court of equity to advance the remedy where it is impossible to exercise the jurisdiction so as to afford any chance of doing justice to the other party. When this court does interfere it endeavors to put the parties in the same situation*, that is when the contract is void. Here, if the defendant could be placed in *mala fide* as having notice, that would be a distinct and different ground for the interference of a court of equity. But upon the simple ground that the contract may have been void, (and whether it was or was not I will not determine,) the consequences are so extensive and inconvenient that I cannot think this court ought to give the defendant the relief he prays." Bill dismissed without costs. As I have viewed this case it is not necessary to question the doctrine that the inquisition is presumptive evidence. The case may be disposed of without either sanctioning or questioning that doctrine. The plaintiff is clearly not entitled to a judgment setting aside the bond and warrant of attorney and subsequent proceedings absolutely, without doing equity. The case of *Neil* v. *Morley*, although like this in many of its characteristics, is not wholly like it. There the plaintiff had it not in his power to restore the property purchased. He had sold it and received the proceeds of such sales. In this case the money which has been paid, and for the security of which the judgment was confessed, may be expended. Equity may be done by the plaintiff,

without injustice to the defendants, or either of them. The judgment and all subsequent proceedings can be set aside on terms, and in case the plaintiff fails to comply with the terms imposed, his complaint may be dismissed with or without costs. The plaintiff having sued in good faith, in a representative character, I think he should not be charged with costs. I shall therefore order that the bond and warrant of attorney and all subsequent proceedings be set aside, on the payment by the plaintiff to the defendant Hamlin of the amount of the judgment and the costs of obtaining the same, and the sheriff's fees, together with interest, within three months from the time of filing the decision; and in case of failure to make such payment, that the plaintiff's complaint be dismissed, but without costs.

[ERIE SPECIAL TERM, February 20, 1852. *Taggart*, Justice.]