Canfield *v.* Fairbanks.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Johnson, Talcott* and *Barker,* Justices.]

———————•◦•———————

63b 461
f 63ad 31

## FANNY M. CANFIELD *vs.* WALTER FAIRBANKS.

In a suit in equity, brought by one of the heirs of a grantor, against another, to set aside a deed executed to the defendant, and to have the plaintiff declared entitled to the undivided half of the premises conveyed, as one of the heirs of the grantor, on the ground that the grantor was induced to execute such deed by false and fraudulent representations, and by undue and improper influence, and that the grantor was of unsound mind, evidence is admissible, on the part of the defendant, tending to show that from the time he became of age he had, at the request of his father, (the grantor) remained upon the farm embraced in the deed, and devoted his time and labor to the same, for sixteen years, without compensation, upon the promise and agreement of the grantor that he should, in consideration thereof, have the farm, in the end, and that he (the grantor) would either deed or will it to him.

Canfield *v.* Fairbanks.

Such evidence is admissible on several grounds : 1. As tending to show a de-
fense to the action.   2. Upon the question of the validity of the deed, as
against the allegation of undue influence.   3. As a circumstance touching
the question of the grantor's sanity or insanity ; and to show the reasonable-
ness and propriety of the deed, and that its execution was a sane and just
act, and evinced the exercise of reason and judgment.

Where the defendant, in such an action has no remedy at law, to get compen-
sation for the labor of years, except through the contract he offers to
prove ; and where, if such a contract existed, he was induced thereby to
remain with his father, and labor for his benefit, for several years, relying
upon his promise that he should ultimately, either by deed or will, have the
farm upon which his labor was thus bestowed, then the case presents the
precise circumstances under which the court will refuse to interfere to set
aside the conveyance ; because it cannot exercise its jurisdiction by so
doing, and at the same time do justice to the defendant.

A court of equity, when its jurisdiction is invoked to set aside deeds and
contracts of a person upon the ground of insanity, acts upon equitable
principles.   It is by no means a matter of course for a court of equity to
set aside and declare void the act of a lunatic executed during his lunacy.
It does so in no case, except upon equitable terms—upon the universal
maxim of that court, that he who seeks equity must do equity.

APPEAL from a judgment in favor of the plaintiff, en-
tered on the report of a referee.

*C. C. Torrance*, for the appellant.

*S. S. Spring*, for the respondent.

*By the Court*, TALCOTT, J.   The plaintiff and the defend-
ant are the only children and heirs at law of Samuel Fair-
banks, who died intestate, in July, 1871.   The intestate
was, for many years, the owner of, and resided upon, a
farm of 76 acres in the town of Ashford, in Cattaraugus
county, alleged in the complaint to have been worth
nearly $4000, at the time of the conveyance hereinafter
mentioned, and which was the only real property he
owned.   On the 12th day of June, 1871, the intestate con-
veyed these premises to the defendant, his son, who, at the
same time, executed back to the intestate a lease of the

Canfield *v.* Fairbanks.

same premises for the natural life of the intestate, reserving no rent. The intestate died on the 15th day of July, in the same year.

This action is brought to set aside the conveyance, and to have the plaintiff declared entitled to the undivided half of the premises, as one of the heirs at law. The grounds set up in the complaint, on which it is sought to set aside the conveyance, are, "that the intestate was induced to execute the same by reason of false and fraudulent representations"—no representation, however, being specified—and "by undue and improper influences," which are also neither described or indicated; and that the grantor was not of sound mind and memory at the time of the execution of the conveyance, but was "wholly devoid of all mental capacity whatever."

No evidence was given of any representations, and no affirmative evidence of any undue influence, beyond proving the relations of the parties, and the fact that they went together to a lawyer, when the two instruments were drawn, and that the son explained to the attorney what they wanted to accomplish, and took the principal part in the conversation, as to the mode in which it should be done. The referee has found, that at the time of the execution and delivery of the deed, the deceased was not of sound mind, and was incompetent to transact the business in question, by reason of the unsound and disordered condition of his mind; and has declared the deed to be void, and ordered a judgment that it be cancelled of record, and that the plaintiff recover possession of the undivided half of the premises.

The evidence touching the alleged insanity of the deceased, tended to show that being a man of about sixty years of age, and in a bad state of health, he had fallen "into a melancholy frame of mind during the last two or three years of his life, expressed apprehensions of coming to want, and became less social and more taciturn than

had been his former habit." Taking the whole testimony together, as stated in the case, it is far from being entirely satisfactory to establish that degree of insanity or mental incapacity the existence of which is necessary to avoid a deed or will. (*See Jackson* v. *King*, 4 *Cowen*, 207; *Odell* v. *Buck*, 21 *Wend.* 142; *Petrie* v. *Shoemaker*, 24 *id.* 85; *Stewart* v. *Lispenard*, 26 *Wend.* 255.)

There was, however, evidence on the subject, and as the judgment must be set aside upon other grounds, we will not discuss the question whether the report is so far against the weight of the evidence, that it should be set aside. Various objections appear to have been taken by the defendant to the admission of questions on the part of the plaintiff, and the exclusion of questions on the part of the defendant, designed to elicit the opinions of witnesses as to the sanity of the deceased, and the impressions on their minds which his conduct had produced. These it is not necessary to discuss here, as by the argument the attention of the counsel has been called to the rules which have been established by the courts on this subject, and on another trial they will probably seek to keep within the rules, as thus laid down.

It appeared that the plaintiff was married about eighteen years before the death of the father, and went at that time away, and continued to reside with her husband, afterwards, and that the defendant, from about the time he became of age, had labored for his father, the deceased, upon the farm in question, without wages or other compensation, except, perhaps, his support, devoting his entire labor to the carrying on and cultivation of the farm; and he offered to prove that his father had induced him to remain, and devote his time and labor to the farm for sixteen years, by promising him, at different times, that he should have the farm in the end, and that he (the father) would either deed or will it to him, in the end.

Canfield *v.* Fairbanks.

This evidence was objected to, 1. As not admissible under the pleadings. 2. That the agreement was void. 3. That the proof was immaterial. We think this evidence was admissible, on several grounds. It was admissible as tending to show a defense to the action. This is an action in equity, in which the extraordinary, and, to a certain extent, discretionary jurisdiction of the court is invoked to set aside a deed. A court of equity, when its jurisdiction is invoked to set aside deeds and contracts of a person, upon the ground of insanity, acts upon equitable principles. It is by no means a matter of course for a court of equity to set aside and declare void the act of a lunatic executed during his lunacy. It does so in no case, except upon equitable terms—upon the universal maxim of that court that he who seeks equity must do equity. As, for instance, where conveyances have been obtained from the lunatic at a great under value, with reason to believe actual fraud on the part of the grantee; yet the amount actually paid must be refunded as a condition of relief. (*Addison* v. *Dawson*, 2 *Vernon*, 678. *Person* v. *Warren*, 14 *Barb.* 488. *Price* v. *Berrington*, 9 *Hare*, 404.)

" The court of chancery," says Mr. Shelford, " will not, as a matter of course, interfere to set aside contracts entered into and completed by a lunatic, even though they be void at law, but the interference of the court will depend very much upon the circumstances of each particular case; and where it is impossible to exercise the jurisdiction in favor of the lunatic, so as to do justice to the other party, the court will leave the lunatic to his remedy, if any, at law." (*Shelford on Lunacy*, 419. *See* also *Story's Eq. Jur.* 228; *Niell* v. *Morley*, 9 *Ves. Jr.* 478; *Loomis* v. *Spencer*, 2 *Paige*, 153; *Sprague* v. *Duel*, 11 *id.* 480.)

In this case the defendant has no remedy at law to get compensation for the labor of the best part of his lifetime, except through the contract he offered to prove, and if such

a contract existed, and it is true that he was induced thereby to remain with his father and labor for those many years for the benefit of the father, relying upon his promise that he should ultimately, either by deed or will, have the farm upon which his labor was thus bestowed, then the case presents the precise circumstances under which, as Mr. Shelford states the rule, the court will refuse to interfere, because it cannot exercise its jurisdiction to set aside the deed and at the same time do justice to the defendant. The fact that the contract was by parol, and void at law, as was objected by the plaintiff, furnishes one of the chief grounds why a court of equity will not interfere to set aside the act by which the alleged lunatic performed it. Indeed a court of equity will decree specific performance against a lunatic of a contract made by him when sane, when the legal estate can be reached. (*Hall* v. *Warren*, 9 *Ves.* 605. *Regge* v. *Skymer*, 1 *Cox*, 23. *Owen* v. *Davies*, 1 *Ves. Sr.* 82.) The right of the plaintiff to set aside the deed is no greater than would be that of the alleged lunatic himself, or his committee, and an examination of the principles upon which courts of equity act in such cases, makes it quite clear that, if a person when sane should enter into a contract for the conveyance of land, which contract was void at law, and the vendee should, under the contract, render all the consideration; and the vendor should convey the land in pursuance of the terms of the contract; a court of equity would not set aside the conveyance on the ground that at the time it was made, the grantor had become a lunatic, where the vendee could not be placed in *statu quo*. The defense was, in substance, stated in the answer. It was there alleged, in substance, that the defendant had worked for the father upon the farm, as stated, and that the deed was executed in consideration of a contract in substance like that offered to be proved.

But the evidence was furthermore admissible on the

Canfield *v.* Fairbanks.

question of the validity of the deed, as against the allegation of undue influence. Where such relations exist between the parties as in this case, and where the beneficiary has occupied such a position that the grantor has been to some extent under his influence, and perhaps to a certain extent under his control, the law raises a kind of presumption of undue influence, so that when the deed is sought to be set aside upon the ground of undue influence, the grantee always may, and often is, imperatively called upon to produce evidence tending, affirmatively, to show the consideration upon which the deed was executed, and fully explain the reasons and circumstances under the influence of which the deed was made. (*Story's Eq. Jur.* 311. *Sears* v. *Shafer,* 2 *Seld.* 268. *Jones* v. *Jones, MSS.* 4*th department November term,* 1871.)

We think the evidence was also admissible, as a circumstance touching the question of insanity, which was one of the grounds upon which it was expressly offered. In the language of the offer, " to show the reasonableness and propriety of the deed, and that its execution was a sane and just act and evinced the exercise of reason and judgment." Although the reasonableness or unreasonableness of the act challenged, is not at all conclusive on the question of the sanity or insanity of the action at the time it was done, yet the circumstances under which the act was done, and the reasons which might have operated to produce it, are not to be wholly excluded from consideration as having no bearing upon the question. (*Patterson* v. *Patterson,* 6 *Serg. & Rawle,* 55. *Clark* v. *Fisher,* 1 *Paige,* 171. *Allen* v. *The Public Adm'r,* 1 *Bradf.* 378. *Gombault* v. *The Same,* 4 *id.* 226.)

The judgment is reversed, a new trial ordered, costs to abide the event, and the order of reference vacated.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Johnson, Barker* and *Talcott,* Justices.]