### CATHCART v. SUGENHEIMER.

1. In action by a former lunatic to recover a lot of land sold during his lunacy under proceedings to which he was no party, instituted by his committee, the defendant may introduce in evidence the record of the probate court adjudging the plaintiff to be a lunatic and appointing a committee of his person and estate.

2. It is the well settled policy of the law to support judicial sales in all cases where the court has jurisdiction.

3. An action at law for the recovery of the property of a lunatic or damages for its detention, must be brought in the name of the lunatic by his committee, but where equitable relief is sought in the Court of Chancery, it seems that the committee may sue alone and without using the name of the lunatic as a party plaintiff, and that the judgment will be as binding upon the lunatic's estate as if he were personally present.

4. And where in such action the property of the lunatic has been sold for the purpose of paying his debts, the proceeds of sale have been so applied, and the purchaser has *bona fide* erected costly improvements, the purchaser is subrogated to the rights of the creditors to whom the payment was made and may retain possession until re-imbursed.

---

Before COTHAN, J., Fairfield, February, 1882.

The opinion states the case.

*Mr. L. F. Youmans,* for appellant.

*Messrs. J. H. Rion, A. S. Douglass,* contra.

October 13th, 1882. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. In June, 1874, John H. Cathcart was found a lunatic under proceedings in the Court of Probate for Fairfield county. On September 2d, 1874, Samuel Cathcart was appointed the committee of the person and estate of the said lunatic. Finding the estate embarrassed to the extent of insolvency and the creditors already pressing for payment or threatening to commence suit, the said Samuel Cathcart, as committee, commenced an action in the Court of Common Pleas, alleging the

lunacy of John H. Cathcart, his appointment as committee, the large indebtedness of the lunatic and the necessity of selling the whole estate for the payment of the debts, and making Hopkins, Dwight & Trowbridge, and Samuel C. Clowney, as clerk of the court, who held mortgages upon certain tracts of land of the lunatic, parties defendant, but omitting to make the lunatic a party by name and service of process, as he was at that time in the lunatic asylum.

The creditors were called in and a referee appointed, who reported that the claims against the lunatic, so far as presented before him, amounted to about $56,000, besides interest, and that he could perceive no means of discharging this heavy indebtedness without a sale of the whole estate. The court confirmed the report of the referee and (after exempting a homestead) adjudged and ordered that the real estate of said lunatic should be sold in different tracts at public auction by the sheriff of Fairfield county, on the first Monday of January, 1875, one-third of the purchase money to be paid in cash, and the other two-thirds upon a credit of one and two years, the proceeds of sale to be turned over to the clerk of the court, subject to further order.

The sale was made as ordered and the defendant, Doreth Sugenheimer, became the purchaser of a lot in the town of Winnsboro' at the sale, and after complying with the terms of sale, received a deed of conveyance from the sheriff under said order. The sheriff made his report on sales, which was confirmed by the court, May 5th, 1875. The purchaser was let into the possession and has retained it ever since, and has paid, in taxes and for repairs, something over a thousand dollars, besides $4,025, the purchase money, which went to pay the debts of the lunatic as established.

On July 24th, 1876, the Probate Court, upon the application of the said lunatic, John H. Cathcart, passed an order superseding the commission of lunacy, and ordering the committee to turn over to him, the said John H. Cathcart, all the books and papers belonging to him, and in January of this year, 1882, the said John H. Cathcart commenced this action against the defendant for the lot of land purchased by her as aforesaid, and

damages for the detention thereof. She claims title under the said proceedings of court and the deed of the sheriff made in accordance with the decretal order therein, and sets up special equities arising out of the payment of the purchase money and the other facts of the case.

Judge Cothran directed a verdict for the defendant, and Cathcart, the plaintiff, appeals to this court upon the following exceptions: 1. Because his Honor erred in admitting as evidence the record in the case of *Samuel Cathcart, Committee*, v. *Hopkins, Dwight & Trowbridge, and S. C. Clowney, as clerk of the court*, the same being as to the plaintiff *res inter alios acta*. 2. Because his Honor erred when he held that the plaintiff was not a necessary party to the action above stated, brought by said committee. 3. Because the charge of his Honor was otherwise contrary to law.

It was not error in the Circuit judge to admit in evidence the record of the case of *Samuel Cathcart, Committee of the Estate of John H. Cathcart, Lunatic*, v. *Hopkins, Dwight & Trowbridge, and Samuel C. Clowney, as clerk of the court, et al.* The plaintiff, before he was declared a lunatic, was the owner of the land sued for. The defendant claimed from him, through the proceedings of court, and offered the record with a view to show that the plaintiff had been regularly declared a lunatic, and the court had pronounced a judgment and ordered a sale of the land, which sale divested the title of the lunatic and transferred it to the purchaser at that sale. That is to say, it was offered as a link in her chain of title. "A judgment or decree is admissible, though *res inter alios acta*, to form a link in a chain of title, but recitals in the record are not sufficient to make out the chain as to strangers. Against them the facts must be independently proved." 2 *Whart. Ev.* § 821; *Wardlaw* v. *Hammond*, 9 *Rich.* 454.

The precise point seems to have been ruled in the old Court of Appeals, in one of the many trials of the case of *McCreight* v. *Aiken.* It seems that the committee sued alone, and when the record of the proceeding, which declared the party a lunatic, was offered, it was objected that it was not admissible in evidence for the reason that the lunatic had not been made a party. In a

subsequent case involving the same transaction (*Rice* 58), Judge O'Neall said : " The first ground contends that the proceedings in equity, establishing the plaintiff's lunacy, were not admissible in evidence, but the case of *John R. McCreight* v. *David Aiken*, decided here, December, 1836, shows that they are admissible between parties other than the lunatic."

It does not, however, follow from the admission of the record in evidence, that it must be regarded as conclusive of everything contained in it as against the plaintiff. It was received for what it was worth, still leaving as undecided the question as to its legal effect—whether John H. Cathcart, the lunatic, was substantially a party to it and represented therein, or an entire stranger and not in any way bound by a proceeding in which he, although a lunatic in the asylum, was not by name made a party. The admission of the record still left the real question of the case to be the legal effect of the proceedings as to the property of the lunatic which had been sold by the order of court.

There is no doubt that this land was purchased and paid for *bona fide* at a judicial sale, that is to say, at a sale where the property was sold under an order of court designating it and authorizing its sale. It is the well settled policy of the law to support judicial sales if it can be done without injury to any one, or the violation of any principle. The purchaser at such sale is in no danger of losing his property by proof that the order was erroneously given. It cannot be collaterally attacked for error or irregularity. The only ground upon which the title can be successfully assailed, is that the court which rendered the decree of sale, in doing so, acted without jurisdiction either of the subject-matter or of the parties. *Freeman on Void Judicial Sales* 42 (and authorities).

Did the court, in ordering this land sold, act without jurisdiction? It has not been denied that the subject-matter was within the jurisdiction of the court, but it is insisted that John H. Cathcart, although a declared lunatic at the time, should have been made a party by name in the proceedings instituted by the committee in his behalf, and that the omission to name him was a failure to make a necessary party, and the whole proceeding must therefore be declared void, and the plaintiff, never having

been divested of his title, may now recover the lot purchased by the defendant.

There seems to be some confusion in the authorities as to the precise character of the relation which one appointed a committee of a lunatic, bears to the person and property of said lunatic. This much, however, is certain, that in this State the relation is not the same as it is in England. It was said by the Chief Justice, in the case of *Ashley* v. *Holman*, 15 *S. C.* 106 : " There is no doubt that the Lord Chancellor, under the sign manual of the King, was the special custodian of this important class of society there, and that committees were his agents and responsible to him. It was not a subject-matter over which his court had jurisdiction, but it was a power conferred upon the Lord Chancellor as the representative of the Crown, to be exercised as a special and personal duty. But whatever may have been or may now be the law in England on the subject, or whatever may have been its origin there, this principle has never prevailed practically in this country." We must, therefore, look for light only to the nature of the relation and our own law as shown by the decided cases.

We may take it as also certain that the mere appointment of a committee to take charge of the person and property of a lunatic, does not *ipso facto* transfer to the committee legal title to the property of the lunatic, as the appointment of an assignee in bankruptcy transfers to him the legal title of the bankrupt by the express terms of the act. The title of his property still remains in the lunatic, even after the appointment of his committee. In this respect the relation may be regarded as analogous to that of guardian and ward.

In the case of *McCreight & McCreight* v. *David Aiken*, 3 *Hill.* 338, Robert McCreight had been declared a lunatic, and the plaintiffs, his sons, appointed his committee. They brought an action at law for a gig and other personal property alleged to belong to the lunatic, and to have been unlawfully taken from him by the defendant. Judge Butler non-suited the plaintiffs, saying that " the legal relation of a committee to a lunatic is analogous to that of a guardian to his ward. For any trespass to the person or property of a minor, an action must be brought

in his name by his guardian, and why should not an action be brought in the same way for a trespass on the person or property of a lunatic? Such a person has a legal existence that is under the protection of the law, and he can take and hold property, real and personal." This ruling was affirmed by the old appeal court, and it seems to be settled in South Carolina that in an action at law, for the recovery of the property of a lunatic, or damages for its detention, the action must be brought in the name of the lunatic by his committee, as in such action he only can recover who has the legal title. *Petrie* v. *Shoemaker*, 24 *Wend*. 85.

But, as we understand it, the rule is not peremptory when the relief prayed for is equitable in its character, and is sought through the forms of Chancery. It is the settled doctrine of this State, that the Court of Equity takes special charge of infants, lunatics and other persons under disabilities, and in doing so exercises large powers over their property under the control of trustees for their benefit, even when such persons under disabilities are before it only substantially and by representation. The doctrine is well stated in the case of *Spencer* v. *Godfrey, Bail. Eq.* 468: "The jurisdiction of the Court of Equity to dispose of the real estate of infants and other persons under disability, has been too long exercised to be now questioned, and a conveyance or mortgage executed by the master in pursuance of an order of the court, which was intended to operate on the title of infants, is binding on them, if they are parties to or represented in the proceeding in which the order was made." This case was approved in *Moore* v. *Hood*, 9 *Rich. Eq.* 327, so far as it decided that infants equally with adults are bound by a decree until it is reversed or vacated.

It seems that all that is considered absolutely necessary to the exercise of this beneficent power, is that the party incapable of acting for himself shall be substantially and fairly represented before the court, and the court should be satisfied that the proposed action is for the benefit of such incompetent person. Some seeming inconsistency, as to who are necessary parties, has arisen from overlooking this difference between the practice in actions at law and in equity. Judge O'Neall says that "all the con-

fusion has arisen from confounding a rule of practice in Chancery with one at law." *Rice* 59.

The proceeding in this case was not an action at law for the recovery of property of the lunatic, but regarding the committee as a trustee, and the lunatic as *cestui que trust*, it was a proceeding on the equity side of the court to anticipate a compulsory and ruinous cash sale of property belonging to the lunatic to pay his debts by obtaining an injunction against creditors and an order for sale on credit. The relief prayed for was purely equitable, and the question is, whether Samuel Cathcart, when he instituted the proceedings expressly as committee in behalf of the lunatic, so represented him and his interest that he may be regarded as a privy in the action and bound by the sale made thereunder.

The question is one of form rather than of substance. For, at the time the extraordinary powers of the Court of Equity were invoked in his behalf, John H. Cathcart was *non compos mentis*, and incapable of doing anything toward the protection of his person or property. For that very reason the court had put him in charge of a guardian, who instituted the proceedings expressly, and in terms, for his benefit. They concerned only him and his property, and were, undoubtedly, intended to be his proceedings. Possibly, it would have been more regular if he had been joined as a co-plaintiff with his committee; but if that had been done, there is no reason to suppose that the judgment would have been different; and if he had been made a defendant by name and nominal service, it is not perceived who could have answered for him but his committee, already before the court, as plaintiff.

As was said in the case of *Executors of Brasher* v. *Van Cortlandt*, 2 *Johns. Ch.* 242: "If he had been joined, it would seem to be mere matter of form. * * * If he be made a defendant, he is to answer by his committee. When the committee is made defendant, there can be no use in joining the lunatic also, for the custody of the estate is no longer in him, but in this court under the administration of the committee. * * * This question of necessary parties is always, more or less, a matter of

I

discretion, depending on convenience. In this case it would be quite absurd to bring in a party who has no capacity or power of action, except by the very persons before the court as his trustees, and where the court is only to look to the certainty of the debt and to the state of the assets in order to provide for its payment." See *Cooley Const. Lim.*, ch. V., p. 97.

The old Court of Equity, in this State, did not regard it necessary that the lunatic should be formally made a party to sustain an order made by that court concerning his rights, or even the sale of his land at the instance of his committee. *Ex parte Drayton*, 1 *Desaus.* 136; *Sims* v. *McLure*, 8 *Rich. Eq.* 286. The case from Desaussure is very meagerly reported, but it seems to have been much like this case. Upon petition of committee, the court ordered the lands of the lunatic, Thomas Drayton, sold, and the commission of lunacy was afterwards superseded. In the case from Richardson, J. S. Sims was appointed committee of one Thaddeus C. Sims, a lunatic, and, without making the lunatic a formal party, filed the bill to set aside sales of certain slaves made by the said Thaddeus, and certain judgments confessed by him before the inquisition. The proof as to some of the charges was held to be insufficient, but the bill was sustained and a reference ordered as to other charges.

By way of suggesting the best practice, Chancellor Wardlaw in that case said: "The practice of instituting such a suit in the name of the committee only, is sustained by high authority. *Story Eq. Pl.*, § 64; *Ortley* v. *Messere*, 7 *John. Ch.* 139. But where, as in this State, the maxim of the common law, that one cannot stultify himself, is not recognized, it is certainly better to follow the general rule of pleading to make all parties to the suit who are materially interested in the object of it, and not to litigate and indulge concerning the estate of any person, even a lunatic, who is not before the court." In the case he referred to from New York, where, under their statutes, a different practice prevails, Chancellor Kent said: "The general practice is to unite the lunatic with the committee, as was done in 2 *Vern.* 678, but there does not appear to be any use in it or any necessity for it, as the committee have the exclusive custody and control of

the estate and rights of the lunatic. The lunatic may be considered a party by his committee, and, like trustees of an insolvent debtor, the committee hold the estate *in trust* under the direction of the court." *Story Eq. Pl.,* § 65.

It is true that the code, § 134, provided that "every action must be prosecuted in the name of the real party in interest," but this does little more than give expression to the general principle long established, that all parties interested in the subject-matter of the suit should be made parties. The code does no more, but on the contrary declares an exception that "an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted." Where the lunatic is sued, the code directs that the summons be served by delivering a copy to the committee or guardian, and to the defendant personally, but we discover no direction where the lunatic or his committee is the party *who sues.*

In such case it would seem the merest form whether the title of the case should be "John H. Cathcart, lunatic, by his committee, Samuel Cathcart," or, as in this case, "Samuel Cathcart, committee of the estate of John H. Cathcart, lunatic." We do not consider that these provisions of the code change the old practice in this particular, so as to require us to declare this sale void. *Mitford's Ch. Plead.* (6 Am. edit.) 31 *and note; Person* v. *Warran,* 14 *Barb.* 488; *Fields* v. *Fowler,* 2 *Hun* 400; *Ashley* v. *Holman,* 15 *S. C.* 97. In the last case cited, which has been decided in our State since the adoption of the code, the Chief Justice, in delivering the judgment of the court, says: "If this was an action in behalf of the lunatic for an unsettled demand on account of wages earned by his labor, then the lunatic himself should have been party plaintiff, but this is not an action strictly for the wages of the lunatic. It is a case *in Chancery* by a trustee against the representatives of a former trustee seeking an account," &c.

But if, from the increased strictness latterly required in this State on the subject of making parties, the lunatic must be regarded as a *necessary party,* though merely a formal one, we think there is merit in the equitable defense set up. It is quite

certain that the defendant purchased the lot *bona fide,* relying upon the orders of court, and that improvements have been made, and that the purchase money went towards satisfaction of plaintiff's debts.   It does not appear that he made any offer of the money thus expended for his benefit.   We cannot see why the purchaser in this case should not be entitled to be subrogated to the claims which she by her purchase paid.

Wherein did this sale differ from that of the property of a decedent for the same purpose?   " If, by a sale of the lands of a decedent, his debts are paid, and it turns out that the sale is void, the purchaser has the right to be subrogated to the claims which he has by his purchase paid.   And he has also the right to retain possession of the property as security for the repayment of the sums to which he is entitled."   *Freeman on Void Judicial Sales* 51.   As Judge Story says in *Bright* v. *Boyd,* 1 *Story* 478: "Such principle has the highest and most persuasive equity, as well as common sense and common justice, for its foundation."

The judgment of this Court is that the judgment of the Circuit Court be affirmed.