### Loomis and Hayden vs. Spencer and Rolph.

Courts never enforce executory contracts against infants or lunatics, except such contracts as are for necessaries furnished.

But where an infant or lunatic has received the benefit of property sold to him in good faith, by a party who had no knowledge of his incapacity to contract, and where no advantage has been taken of his situation, a court of equity will not interfere to set aside the contract.

Where the creditor of a lunatic on the sale of property to the latter in good faith has obtained a legal security, the court of chancery will not deprive him of such security without restoring to him so much as the estate of the lunatic has been actually benefitted by the sale:

April 6th.

THE bill in this cause was filed in 1818, by Hayden, as the committee of Loomis who had been found a lunatic, to set aside a judgment in favor of Spencer against Loomis and J. O. Rolph, entered upon a bond a warrant of attorney alleged to have been executed while Loomis was of unsound mind. The cause was heard before Chancellor Sanford, and he awarded an issue to try the question of lunacy. The issue was tried before Judge Betts, in 1825, and the jury found that Loomis was a lunatic at the time the bond and warrant of attorney were given, and at the time the debt was contracted which formed the consideration thereof. The cause was then heard before the late Chancellor Jones, who decreed a perpetual injunction against proceeding on the judgment or upon the execution issued thereon, so far as the same related to Loomis. A rehearing having been granted, the cause was again heard before the present chancellor.

*A. Van Vechten,* for complainant. The bill in this cause was filed for a perpetual injunction against the judgment and execution, so far as the same relates to Loomis, upon the ground that he was a lunatic at the time the goods were contracted for, and that he so continued until the giving of the bond and warrant, and the entering up of judgment thereon.

It is a settled elementary principle both of law and equity, that a lunatic is incapable, per se, of making a valid con-tract, because he lacks that intelligence and discretion which

are necessary to give validity to a contract. He is therefore not held legally responsible for his acts. (*Addison* v. *Mascall*, 2 Vern. 678. Robert's case, 3 Atk. 312. 2 Mad. Ch. 593.)

The case of *Niel* v. *Morley*, (9 Ves. jun. 478,) upon which the defendant's counsel relies to sustain the defence, and which seems to favor his purpose, is, I apprehend, at war with long established principles, and distinguishable from the present case. That was a bill inter alia for the repayment of money paid on account by the lunatic. The sale was at auction during several successive days. The lunatic was present the whole time, and made the purchases himself. There has been no issue between the parties to have the fact of his lunacy at the time he made the purchases ascertained by a jury. And the master of the rolls seems to have yielded to his apprehensions of extensive and almost illimitably mischievous consequences which might result from sustaining the complainant's bill.

In this case Loomis was only present at the first and smallest purchase at a private store. The purchase was made by alleged copartners, on account of an alleged or contemplated copartnership between the lunatic and others. The bond and warrant to confess judgment were executed more than a year afterwards; and the fact of lunacy has been conclusively settled by the verdict of the jury, on the feigned issue between the parties, which finds that he was a lunatic not only at the time of the several purchases, but when the bond and warrant were executed. Here there were some persons concerned in the purchase, who participated in the benefits thereof, and who were bound by the contract. Had Spencer sued Loomis upon the original contract, lunacy would have been a good defence to the suit on his part. But by obtaining a bond and warrant of attorney from him more than a year afterwards, and while in a state of lunacy, a judgment has been entered up against him and the same co-obligor, without an opportunity for defence. Thus circumstanced, a court of equity is called upon to afford him relief; and according to the doctrine of the master of the rolls, in *Niel* v. *Morley*, this court (whose peculiar province it is to guard the rights of lunatics) must shut the door against him and turn

him back to a court of law. Can this be sound equity? How will it comport with the opinion of Chancellor Sandford, when he awarded a feigned issue to ascertain by the verdict of a jury the fact of Loomis' lunacy? Why was this, if this court cannot grant the relief prayed for? Again, how will it comport with the opinion of Chancellor Jones, who, upon the fact of lunacy being ascertained by the verdict of the jury, decreed relief?

Had an application been made to the supreme court in due time after the judgment, upon proper proof of Loomis' lunacy, that court would have assumed and exercised equitable powers by awarding a feigned issue to try the question of lunacy; and upon Loomis being found a lunatic, according to the opinion of the master of the rolls, the supreme court must have set aside the judgment and declared the bond and warrant of attorney void. Laches cannot be imputed to Loomis (he being a lunatic) for not making the application and be deemed a ground for denying him relief here.

The doctrine is not sound that equity will not interpose to arrest the enforcement of a contract, void by reason of lunacy. And it is not equity that a lunatic should be bound by a contract, which both law and equity declare him incapable of making.

The insolvency of Rolph can have no bearing upon the case. For a contract void as respects Loomis, by reason of his lunacy, cannot become valid in consequence of the subsequent insolvency of any of the other parties; nor can the invalidity of the original bargain be obviated by a bond and warrant of attorney of the lunatic, given more than a year afterwards (while his lunacy continued) in consideration of that bargain; because the fact of lunacy, and the legal consequences flowing from it, are equally decisive against the bond and warrant as against the original bargain.

The invalidity of a lunatic's contract depends upon the fact of his lunacy when it was made. This fact remains the same whether the opposite contracting party had notice of it or not. The ignorance of the latter of the lunacy will exempt him from the imputation of fraud, but does not remove

the legal incapacity of the lunatic to make a valid contract. Hence it would seem to follow, that want of notice in such a case cannot give efficacy to an invalid contract.

*H. Bleecker*, for defendant. It is contended on the part of the defendant that this court ought not to interfere to relieve the property of the complainant Justin Loomis from the judgment and execution mentioned in the pleadings in this cause. The defendant was entirely innocent and ignorant of the alleged incapacity of Loomis, when the goods were sold to him and when the security was taken.

If Loomis had paid the money for the goods, it is clear this court would not have interfered. On the same principle it ought not to interfere against the security taken for the price of the goods. For the principles which govern the court in such cases, see 2 Mad. Ch. 594, and *Niel* v. *Morley*, 9 Ves. jun. 478. The doctrine is, that a court of equity will not interfere to set aside a contract overreached by an inquisition in lunacy, if fair and without notice, especially when the parties cannot be reinstated.

The principles on which the court act in such cases are so fully stated and illustrated by Sir William Grant, as master of the rolls, in the above mentioned case, that nothing more can be necessary than to refer to his opinion.

The court cannot in this case reinstate the defendant. Its interference is matter of discretion. It will not interfere against equity and conscience, but leave the party to his remedy at law. That Loomis had the goods in partnership and in conjunction with others, we suppose can make no difference in regard to the equity of the defendant. He has lost the goods. Suppose Loomis alone had paid all the money for them; each partner is liable for the whole partnership debt. It is no answer to say that Loomis was not capable of entering into a partnership. The defendant had no notice of his incapacity, and may have trusted, and probably did trust to the responsibility of Loomis. His partners may have believed him to be of sound mind.

The principles on which the court refuses to interfere, are as applicable to the case of a purchase in conjunction with

1830.

Loomis
v.
Spencer.

others, as to the case of purchase by one alone. The loss to the defendant is the same in both cases.

The answer responding to the bill alleges that the bond and warrant of attorney were given for a debt due from Loomis and Social Rolph to the defendant and his partners. As to the evidence of partnership, see *Whitney & Bancroft* v. *Sterling*, 14 John. R. 215.

Social Rolph was a competent witness; no objection appears to have been made to him.

If the whole debt should be paid out of Loomis' estate, Social Rolph will be liable to contribution. If he is unable to pay, he has no interest. The defendant, by entering up judgment against Loomis and Jacob O. Rolph, discharged Social from the demand.

It seems that Social did not execute the warrant of attorney, and that he executed the bond after the judgment was entered up. But if the fact of a purchase in conjunction with others can make a difference, then at all events the estate of Loomis should be liable for so much of the goods as he actually received; and if the pleadings and proofs do not sufficiently show this, the court will direct the proper means to ascertain it. It is, however, respectfully contended that the fact of a purchase in connection with others, leaves the innocent defendant in this cause in the same situation as if the sale had been to Loomis alone.

To shew that lunacy is not a defence even in a suit at law, for the price of goods sold, when the vender is ignorant of the lunacy, I cite *Baxter and another* v. *The Earl of Portsmouth*, (5 Barn. & Cress. 170, 11 Serg. & Low, 190;) and the same parties, (2 Car. & Paine, 178, 12 Serg. & Low. 79.)

THE CHANCELLOR. It is evident from the pleadings and proofs in this case, and from the finding of the jury, that at the time when the alleged partnership between Loomis and the Rolphs was formed and the goods purchased, and at the time the bond and warrant were given, Loomis was a lunatic, or person of unsound mind. It also appears equally certain that Spencer had no knowledge or suspicion of that fact.

1830.

Loomis
v.
Spencer.

A judgment being entered on the bond and warrant, the complainants have no defence at law except by an application to the equitable powers of the court where the judgment was entered. They have elected to file their bill here, and the question is whether the defendant Spencer is entitled to retain the legal advantage he has obtained.

There is no doubt of the propriety of courts refusing to enforce executory contracts entered into by a lunatic or an infant; and probably no recovery could be had in either case in a court of law. The courts proceed upon the ground that neither has legal capacity to contract. Although a contract of purchase made by either, except for necessaries, could not be enforced, yet a court of equity ought not to interfere where the infant or lunatic has actually had the benefit of the property, if the contract was made in good faith, without knowledge of the incapacity, and where no advantage has been taken of the situation of the party. In *Niel* v. *Morley*, (9 Ves 477,) Sir William Grant refused to interfere where the lunatic had purchased property at auction and paid part of the purchase money and given a warrant to confess judgment for the residue; the sale having been made in good faith, without knowledge of the lunacy, and it being impossible to restore the parties to their former situation. In *Baxter and another* v. *The Earl of Portsmouth*, cited by the defendant's counsel, (5 Barn. Cres. 170, and 2 Car. & Payn, 178,) but much more fully reported by their cotemporary reporters, (7 Dow. & Ry. 614,) the court of king's bench permitted the plaintiffs, who were coachmakers, to recover against a lunatic for the use of a coach and a landau and harness. The carriages were made to the defendant's order; were suitable to his rank and condition in life, and had been hired to him for several years at a fixed sum per annum; the plaintiffs keeping them in repair for his use. In that case Bailey, J. says, " there is here no suggestion that the plaintiffs have not bona fide given the defendant credit. Exhibiting about him no appearance of mental incapacity, he goes to the plaintiffs' house and orders carriages, which are afterwards used by him. They are suitable to his condition and degree in life, and such as would have been supplied by

other persons if not by the plaintiffs.    Under these circumstances I think law and justice require that the plaintiffs should be allowed to maintain an action against the lunatic." If such are the principles of a court of law in regard to lunatics, certainly a court of equity should not deprive a creditor of a legal advantage, which he has obtained, without restoring to him whatever benefit the estate of the lunatic has received in consequence of the contract.    I doubt however in this case, whether Loomis ever received any benefit from the goods sold.    He being a lunatic, the alleged partnership between him and the Rolphs was absolutely void.    And I think it is pretty evident the proceeds of the goods went into their hands ; though Social Rolph testifies that a part of the goods were taken to the house of Loomis and retailed out by him.

This witness was probably interested in throwing a part of the debt on to the estate of Loomis, to discharge himself from liability on the bond.    If Spencer is willing to risk the expense of a reference for the purpose of ascertaining whether Loomis has been benefitted by the sale of these goods to him and the Rolphs, the decree must be modified so far as to permit the amount of such benefit only, when ascertained by a master, to be collected out of the estate of Loomis on the execution.    Otherwise the former decree must be affirmed without costs to either party.