Williams, C. J.
In support of the judgment rendered by the trial court,it must be presumed that the evidence offered by the plaintiff was sufficient *401 to 'establish, the facts it tended to prove; and so regarding them, and giving those admitted by the parties their proper effect, the material facts which that court had before it, as shown by the record were, that the defendant, when he signed the note in suit, was an idiot incapable of understanding or making any valid contract, which was then known to the payee, and he has since continued in that condition; but that the plaintiff acquired the note for value, before its maturity, and without knowledge of the maker’s incapacity; and the question presented is, was the plaintiff, upon that state of facts, entitled to recover on the note; neither party having given any evidence tending to show whether any consideration was, or was not paid or given for it, or received by the maker ?
It is contended in behalf of the plaintiff, that the note, notwithstanding the admitted incapacity of the maker to contract, imports a consideration, which imposed the burden on him of showing a want of consideration in order to defeat a recovery on it; while on the other hand, it is claimed that before any recovery could be had on such a note, if an action could be maintained upon it at all, it was incumbent on the holder to prove a meritorious consideration which was received by the maker, and which alone could give rise to any liability upon it, against his estate. There appears to have been a time in the earlier history of the English law when the contracts of persons non compos mentis were enforced like those of persons who were competent to contract; it being held, that a party should not be allowed to stultify himself by alleging his own incapacity; but that doctrine was so repugnant to justice and common sense that it was not long ad *402 hered to, and now finds no support anywhere.' On the contrary, the rule is now established both in England and this country, that the contracts of persons non oom/pos mentis are not binding on them either in law or equity; and that rule rests upon the elementary principle that to the making of a valid contract the consent of the contracting parties is essential; their minds must meet and agree upon the terms and consideration of the contract, and where there is not capacity to understand or agree, there can be no contract. Many authors and courts have declared the executory contracts and promises of such persons to be utterly void. Edwards on Bills, 63; Byleson Bills, 150. In Story on Promissory N otes, it is said: ‘ ‘Every contract presupposes that it is founded on the free and voluntary consent of the parties, upon a valuable consideration, and after a deliberate knowledge of its character and obligation. Neither of these predicaments can properly belong to a lunatic, an idiot, or other person non compos mentis. Hence, it is a rule not merely of municipal law, but of universal law, that the contracts of all such persons are utterly void. ” And, it is held that it can make no difference in this respect that the party dealing with such person was ignorant of his incapacity, for if he have no contracting capacity, the fact that it was unknown to the other party cannot deprive him of his right to be protected against his misfortune. As stated by Tenterden, C. J., in Sentance v. Poole, 3 Car. & P., 1, 1827: “It is a hard case either way, but it is very important that courts of justice should afford protection to those individuals who are unfortunately .unable to be their own guardians.” It has accordingly been held that a note signed by a lunatic is void as against him, in the hands of every holder *403 however innocent. Seaver v. Phelps, 11 Pick, 304; Van Patton v. Beals, 46 Iowa, 62; 1 Parsons on Bills and Notes, 149.
Other authorities maintain that the notes and other contracts of such non-sane persons are voidable only, like those of infants, and may become valid by ratification when their infirmity is removed, as may those of infants by an act affirming them after arriving at full age. But as such contracts remain invalid until so ratified, it is not of much practical importance whether they be treated as void, or voidable in the sense indicated. Not only in this respect, but in others also, are the contracts of infants similar in their- effect to those of persons laboring under mental incapacity. Thus, to the general rule that their contracts are invalid, an exception obtains applicable alike to those of both classes of persons, where the contract is for necessaries actually furnished them. Those exceptional contracts are held valid at least to the extent of the value of the necessaries actually furnished. In Byles on Bills, in a note to page 64, it is said that, “the executed contracts of a non compos mentis, for necessaries stand on the same footing of infants contracts for necessaries.” In Maxwell-on Code Pleading, 448-9, the law on this subject is accurately stated as follows: The executed contracts of a per. son non compos are very much like those of infants, and when necessaries suitable to his station in life have been furnished, and the transaction is fair, and no undue advantage taken, he will be liable for the value of the goods.”
To the general rule that the notes and other contracts of a non sane person are invalid and will not be enforced, another exception has been made, analogous to that relating to necessaries; or, it might *404 with, propriety be «aid, that exception, has been enlarged and extended to embrace cases where the note has been obtained or contract entered into in good faith, in ignorance of his want of capacity to contract, and for a full and adequate consideration of money paid or property delivered to him, or other sufficient consideration actually received by him, so that, in such cases the contract can not be avoided by him or his representative, without restoring the consideration so received. This doctrine is not universally accepted, but is, we think, sustained by the weight of authority, and seems fair and reasonable, with the qualifications and limitations prescribed for the protection of those who are deprived of the requisite capacity to enter into a valid agreement; the remedy against them in such eases being based not so much upon the contract, as upon the benefit actually received by them.
In Matthiessen v. McMahon, 38 N. J. L., 536, it is held that: “The general rule is that contracts with lunatics and insane persons are invalid, subject to the qualification that a contract made in good faith with a lunatic for a full consideration, which has been executed without knowledge of the insanity, or such information as would lead a prudent person to the belief of the incapacity, will be sustained. ’ ’’ The true scope of the doctrine is stated in the opinion of the court in that case, where, after stating that contracts for necessaries constituted an exception to the general rule that lunatics were not liable on their contracts, the court says: “Other contracts with lunatics not strictly for necessaries, which have been fully executed, and on which a consideration of benefit to the lunatic has been given, may be within the reason of this exception, where the transaction is shown to be *405 perfectly fair and reasonable, at least so far as to allow the recovery back of the consideration given, or prevent a recision by the lunatic or his representative without restoringtheconsideration whenever a restoration is practicable. The liability of the lunatic in such eases is upheld, not on the ground of the contract, but on the fact that the lunatic has received and enjoyed an actual benefit from the contract. ” And in Yauger v. Skinner, 1 McCarter, 389, it is said by Chancellor Green, ‘ ‘ that if the proof be clear that an executory contract to purchase was made in good faith, and for a fair price when the lunacy of the vendor was neither known nor suspected, and that the contract was executed on the part of the purchaser without knowledge or belief of the existence of the incapacity of the grantor, the contract will be upheld. ” In the case of Loomis v. Spencer, 2 Paige 153, it is said by Chancellor Walworth, that: “There is no doubt of the propriety of the courts refusing to enforce executory contracts entered into by a lunatic or infant; and probably no recovery could be had in either ease in a court of law. The courts proceed upon the ground that neither has legal capacity to contract, although a contract of purchase made by either, except for necessaries, could not be enforced, yet. a court of equity ought not to interfere where the infant or lunatic has actually had the benefit of the property, if the contract was made in good faith, without knowledge of the incapacity, and where no advantage has been taken of the situation of the party.” And it is held in Young v. Stevens, 48 N. H., 133, that: “As a general rule, insanity may be pleaded, or given in evidence, in bar to an action founded either upon an executory or executed contract;” but “where a person, *406 apparently of sound mind, and not known to be otherwise, enters into a contract ‘ for the purchase of property, which is beneficial to the purchaser, and otherwise fair and bona fide, and which has been fully completed, paid for, and enjoyed, and cannot be restored so as to put the parties in statu quo, such contract will not afterward be set aside either by the lunatic or his representatives. ” This doctrine is maintained by many cases, among them the following: Insurance Co. v. Hunt, 79 N. Y., 541; Scanlan v. Cobb, 85 Ill., 296; College v. Wilkinson, 108 Ind., 315, 320; Gribben v. Maxwell, 34 Kan., 8; Burnham v. Kidwell, 113 Ill., 425; Alexander v. Haskins, 68 Iowa, 73; Riggan v. Green, 80 N. C., 236, 239; Bank v. Moore, 78 Pa. St., 407.
We are not aware of any authority which has extended the liability of infants or insane persons on their contracts, beyond those for necessaries actually furnished them, and those falling within the doctrine of the cases referred to, where a full and adequate consideration of value was actually paid or delivered, in good faith, and without knowledge of their incapacity; and it is obvious that, to the maintenance of an action on a contract of the latter class, something more is required than where it is sought to recover on a contract for necessaries ; that is, not only must there have been a full and adequate consideration paid, but the transaction must have been a fair and reasonable one, made in good faith by the plaintiff, without knowledge of the defendant’s want of capacity to contract. -
It is well settled that in all actions upon notes or contracts claimed to have been made for necessaries furnished to an infant or insane person, the burden is upon the plaintiff to prove they were *407 furnished to the amount or value of the note. He may allege that the defendant was a person of one of the classes-named when the contract was made, and that it was for such necessaries, and when the latter allegation is denied it is incumbent on him to prove it; or, if he declare on the note or contract generally, without disclosing the incapacity of the defendant, it is a complete bar to plead the defendant’s incapacity at the time of the making of the contract; to overcome which, the plaintiff may reply that it was made for such necessaries, and must support his reply by the necessary proof. In Edwards on Prom. Notes, 63, this rule is stated as follows: “When the action is upon a note given by an infant, it is barred by the plea that it was given by an infant, and unless the plaintiff proceeds then to show that the note was given for necessaries his action fails.” So, in 1 Parson on Notes and Bills, 150, it is said that, “to defeat a promissory note, it is only necessary to prove a condition of mind which makes self-protection impossible.” In Byles on Bills, p. 61, note, the rule is thus stated: “Infancy is prima facie a g’ood defense to a suit on a note, and as the holder must in answer prove the consideration to be necessaries, that throws open the whole question for the benefit of the infant. ” And in Maxwell on Code Pleading, 449, it is declared that: “Insanity is generally a bar to an action on an executory contract.” On page 448, the same author says : “In pleading infancy it may be alleged in the answer. that at the time of making the contract set forth in the petition the defendant was under the age of 21 years. If the consideration for the contract was necessaries, or the defendant had ratified the contract by a new promise after he became of age, *408 these facts may be stated in the reply. In those states where no reply is required the necessary facts, such as ratification, necessaries, etc., must be stated in the petition, and in any case where the infancy appears from the facts stated, additional facts must be pleaded which show that infancy is no defense.” And, in pleading the defense of insanity it is sufficient to allege “that at the time of entering into the alleged contract the defendant was of unsound mind, and incapable of understanding the same or entering' into a contract.” A similar practice obtained before the code. 3 Swan’s Practice and Precedents, 694-5-6. Wilcox’s Ohio Forms and Practice, 129-9.
The reasons for placing the onus on the plaintiff of overcoming by proper proof the defense of infancy or insanity when pleaded to an action on a contract for necessaries, require that the plaintiff take the like burden in all actions on contracts of persons under those disabilities, when the defense is interposed; for it is as complete a defense in actions on contracts other than those for necessaries, as in actions brought on contracts for necessaries; and it is just as essential that it be overcome by proper evidence in the one case, as in the other, before the plaintiff can recover. And such appears to be the established rule. It is laid down in Bailey on Onus Probandi and Preparation for Trials, 144-5, as follows: “The creditor may show in reply to proof of insanity, that the contract was for necessaries, even if a note be given therefor. So the creditor may, taking the burden, reply to evidence of insanity that the contract was made during a lucid interval or in reply to the defense of insanity, it may be shown that such insane person, being apparently of sound mind, *409 and not known to be otherwise, entered into the contract for the purchase of property which is fair and bona fide, and which is executed and completed, and the property, the subject matter of the contract, has been fully enjoyed and cannot be restored so as to put the parties in statu quo.'1'1 It would seem, therefore, that no contract of a person non compos mentis, in whatever form it may be put, whether in that of a promissory note or otherwise, can, on account of his want of capacity to make a valid execution of it, so import a consideration as to cast upon him the burden of proving a want of consideration, in an action brought upon it, or dispense with proof of an adequate consideration to support it as against him or his representative. The difference in that respect between such a note or contract, and one obtained from a person of weak understanding merely, is obvious, and need not be pointed out here.
In the argument of counsel for the plaintiff in error some stress appears to be placed upon the fact that when the note in suit was signed by Beard, he was doing business in his own name. The nature or extent of that business is not disclosed. The fact could only be material as tending to prove he was sane, and therefore competent to execute the note, and can be. of no importance in that respect in the face of the admitted fact that he was insane and not competent to execute it, and that was known to the payee at the time; nor, is it important as affecting the plaintiff’s relation to the note, in view of the admission that it was transferred to him before maturity, for value, and without notice of the maker’s incapacity to execute it. If such a note so received was protected in the hands of the plaintiff against de *410 fenses which the maker might have against the payee at the time of the transfer, it was of no consequence whether the maker was doing any business at the time of its execution, or was not; and it is equally immaterial if it is not so protected; for upon, the admitted fact that he was insane and known to the payee to be so when the note, was ..signed,. .his defense was complete against the latter, and therefore ■ equally so aganst the plaintiff,. notwithstanding he was doing business in his own name when he signed the note. The material question then is, whether that rule of commercial law which protects negotiable paper in the hands of a bona fide holder who has acquired it before its maturity, for value, is applicable to such paper signed by persons who at the time were non com/pos mentis, where there had been no ratification of it; and that it is not, is well settled. Such paper being invalid, except to the extent that it is founded upon a consideration of necessaries, or other valuable consideration actually furnished, an" action, disassociated from such "cdnsideration cannot be maintained upon it, when the incapacity of the maker is shown; and the quality of negotiability does not attach to it, though made negotiable in form; and every holder of such- paper is chargeable in law with notice of the status of the maker as it existed at the time of its execution, and stands, therefore, in no better position, so far as his right of action against the maker is concerned, than the payee from whom he obtained it; and a want of actual knowledge, when he received the note, of the maker’s mental condition when it was signed, makes no difference in "that respect. So far as we have been able to discover, the authorities *411 uniformly maintain that the paper of persons non compos, infants, and femme coverts at common law, all resting upon much the same principle, is not within the commercial rule which protects a bona fide holder of a negotiable note received before it became due, from the defenses which the maker might have made against the payee; and, that in defense to such paper in the hands of such a holder the maker’s incapacity to execute it may be shown. In McClain v. Davis, 77 Ind., 419, it is held that: “A promissory note, payable in bank, given upon an unexecuted consideration to one who knew of the maker’s disability, though it has passed .into the hands of an innocent purchaser, may be dis-affirmed ; ” and that ‘ the purchaser of such paper takes it with constructive notice of all legal disabilities of the parties, such as infancy, coverture and unsoundness of mind. ” In the opinion the court say: ‘Commercial paper is not an exception to the rule which permits a disaffirmance by any one who was of unsound mind at the time of becoming a party thereto. The purchaser of such paper takes with constructive notice of all legal disabilities of the parties, such as infancy, coverture, and unsoundness of mind.” Parsons on Notes and Bills, p. 149, 150 ; Edwards on Bills, pp. 63, 69.
In the case of Moore v. Hershey, 90 Pa. St., 196, it appeared that Moore, when insane, but before he was adjudged to be so, signed a negotiable note which was indorsed by the payee to Hershey, before due, and for value, and without any knowledge of Moore’s insanity. In an action brought by Hershey on the note, Moore’s incapacity to make it was set up as a defense, and as the report states, at the trial, the plaintiff having proven the signa *412 ture to the note and put the same in evidence, and proven the consideration paid for it, rested. Judgment having been recovered by the plaintiff, the ease was taken on error to the supreme court, one of the errors assigned being that the trial court declined to instruct the jury that it was “incumbent on the plaintiff to show that the defendant, a lunatic, received value for the note in suit, and there being no such proof the defendant was not bound by the note.” The judgment was reversed, In the opinion, the court, after referring to the decision of a former case, Bank v. Moore, 78 Pa. St., 407, and declaring it to be “a just rule,” as there enforced, that “where a lunatic obtains the property of another person who in good faith deals with him in ignorance of his lunacy, he shall not keep both the property and the price,” and that “themost that has been decided is, that when a man deals fairly with a lunatic, and without knowledge of his lunacy, he is entitled to recover the value of what he honestly parted with,” say, they place their decision in the case then before them, upon the broad ground that the principle of commercial law which protects negotiable paper in the hands of a tona fide holder, “does not apply to the case of commercial paper made by madmen;” and, “on the contrary, the true rule applicable to such cases is, that while the purchaser of a promissory note is not bound to inquire into its consideration, he is affected bj^ the status of the maker, as in the case of a married woman or a minor. In neither of these cases can he recover against the maker. In the ease of a lunatic, however, he may recover provided he had no knowledge of the lunacy, and the note was obtained without fraud, and upon a proper consideration.” The rule thus *413 announced is approved in the subsequent case of Wirebach v. Bank, 97 Pa. St., 543, where it is held: “The holder of an insane person’s note is in no better position than the payee.” Judge Sharswood in his note to the seventh edition of By les on Bills, p. 61-2, states the rule with clearness and accuracy as follows : “It seems very clear that when the security is of such a nature that by the rule of law the consideration cannot be inquired into, then the infant is not liable. In the hands of the payee, hovever, it may be inquired into and it would seem necessarily in the hands of the indorsee. Infancy is prima facie a good defense, and as the holder must in answer prove the consideration to be necessaries, that throws open the whole question for the benefit of the infant;” and further, that “on proof' that the maker is an infant, the negotiability of the note is at an end, but it does not cease to be a note. It may be sued on by the holder in his own name. He stands in the shoes of the original payee, and can recover whatever he would have been entitled to recover.” “The holder, at most, must be subrogated to the rights of the original payee in an action in the name of the payee on a declaration founded on the original consideration. ’ ’ And see Tiedman on Commercial Paper, section 48. Further reference to authorities on that subject would be unprofitable here, since counsel for the plaintiff concede that the paper of insane persons, though negotiable in form, is not negotiable within the commercial rule. But they seek to make that rule so far applicable as to protect such paper in the hands of an innocent holder against all defenses except fraud or want of consideration. Our attention has been called to no such qualified rule of the law merchant as protects negotiable *414 paper in the hands of a bona fide holder against some defenses, growing out of the transaction, which the maker might interpose in a suit brought against him by the payee, and lets in others; and we know of none. The paper of an. insane person, however perfect in form it may be, not having the quality of negotiability within the- rule of the law merchant, by reason of the incapacity of the maker, and the holder occupying no better position with respect to it than the original payee, the plea of insanity at the time of the execution, is as available, and has the same effect as a defense in a suit by the holder, as if the suit were by the payee. In each case it avoids the note and defeats a recovery, unless the plaintiff is able to show it was given for necessaries, or, that the maker otherwise received an adequate consideration for it, in a transaction that was fair and reasonable on the part of the payee, and without knowledge by him of the maker’s mental condition. That requirement is not met nor dispensed with by the fact that the holder paid value to the payee for the transfer of the note; that is necessary to the protection of the holder of negotiable paper under the commercial rule. As said in the case of Wirebach v. Bank, supra: “If the fact that the holder had paid value were enough, the lunatic could not defend for fraud or want of consideration; then an innocent holder could recover, though the judgment would sweep away the lunatic’s estate, and had not been benefited a farthing. ” Upon the case made in the trial court, as shown by the- record, we think the plaintiff was not entitled to recover, and the circuit court committed no error in reversing the judgment rendered in his favor, and remanding the cause for a new trial.

Judgment affirmed.