## HAINES v. SCOTT.

(Supreme Court, Appellate Division, First Department. December 9, 1898.)

1. VENDOR AND PURCHASER—INSANITY—SUFFICIENCY OF EVIDENCE.

A contract to buy land was entered into by intestate in February, to be completed in March, but before the latter date intestate became insane. There was no evidence that before or at the time of the execution of the contract intestate exhibited any indication of insanity. An expert on insanity, who was later in charge of intestate, testified that intestate had been suffering from general paresis for four or five months prior to his admission to the asylum in the following June, when he had just passed through the first stage of the disease, but there was no evidence to show what effect the first stage of general paresis has on one's ability to contract. *Held* not to show intestate's insanity or incompetency to transact business at the time of the making of the contract.

2. INSANE PERSONS—CONTRACTS.

An executed contract with one not known to be of unsound mind, when entered into without notice to the other party calling for inquiry, should not be set aside, where fairly made without advantage being taken of the lunatic.

3. SAME—EVIDENCE.

Evidence of the price which the vendor paid for the land conveyed is inadmissible in an action by the representative of the vendee to recover a payment made on the contract, on the ground of insanity of the vendee at the time of making the contract, where there was no allegation that the property was not worth the purchase price or that any unfair advantage was taken by the vendor.

Appeal from trial term, New York county.

Action by Ida M. Haines, as administratrix of William D. Haines, deceased, against William E. Scott, to recover $1,000 alleged to have been paid to defendant by intestate while the latter was of unsound mind. From a judgment entered on the dismissal of the complaint on a trial before a jury, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William S. Bennett, for appellant.
W. J. Gree, for respondent.

INGRAHAM, J. William D. Haines, the plaintiff's intestate, entered into a contract with the defendant, whereby Haines agreed to purchase from the defendant a tract of land in Pike county, Pa., with certain personal property, for the sum of $34,500, of which $7,500 was to be in cash,—$1,000 of this $7,500 was to be paid by the transfer of a $1,000 note upon the execution of the contract, and $6,500 was to be paid within 30 days from the date of the contract. The balance was to be paid by assuming a mortgage upon the premises and by the execution of a second mortgage by Haines to the defendant. The contract was executed on February 16, 1893, and was to be completed on March 18, 1893. A note of a third party for $1,000 was delivered to the defendant by Haines, which note was paid to the defendant. Subsequently, and before the time for the completion of the contract, Haines became insane, and nothing further was ever done under the contract. Haines was subsequently taken to an insane asylum, where he died

in April, 1895, suffering from general paresis.   No action was taken
to disaffirm this contract or to recover back the consideration paid
by Haines upon its execution during his lifetime; but after his
death his widow, being appointed administratrix, commenced this
action to recover the amount of the note delivered by Haines to
the defendant, and which had been paid to the defendant.   The
defendant was called as a witness by the plaintiff, and testified to
the execution of the agreement between himself and Haines, the
receipt of the note from Haines, and the fact that the note had
been paid to him, and that he accepted this $1,000 note as a first
payment under the contract.   It appeared from the evidence that
Haines was in the possession of his usual faculties at the time of
the execution of the contract and prior thereto.   There is no evi-
dence that before or at that time he exhibited any indication of
insanity, or that any one of his usual companions suspected that
he was not of sound mind.   His widow was called as a witness, but
failed to testify to any fact which would show that Haines was
insane prior to the time he executed this contract.   A nephew of
Haines was called by the plaintiff, and testified that he resided in
the same house with Haines from November, 1892, to February or
March, 1893, and later; that up to the time that he saw Haines in
the South, after the 11th of March, 1893, he never noticed anything
that indicated mental unsoundness; that the first intimation he
had that Haines was suffering from any mental disturbance was a
letter that he received from Haines while in the South, after the
11th of March, 1893.   A brother-in-law of Haines was called by
the plaintiff, who testified that he first noticed, from anything that
Haines said or did, that his mind was in any degree impaired, when
he returned from the South, about March 22 or 23, 1893.   With
the exception of the evidence of the physician, to which attention
will be called hereafter, there was not a particle of evidence to
show that at the time this contract was executed Haines was in-
sane, or had ever exhibited any evidence of insanity.   It seems that
some time after this contract was made, and some time after the
1st of March, 1893, Haines went to Florida, remaining there about
10 days.   He then left his wife in Florida to return to New York,
and seems to have stopped at Florence, S. C., and, in consequence
of a communication that he sent to his nephew, his nephew went
to Florence, and found him there.   He then seems to have become
insane, to have been brought back to New York, and to have con-
tinued insane until his death; but, so far as appears, there is not a
particle of evidence to show that before March 11th he had ex-
hibited any indication of insanity.   Dr. Evans, the physician in
charge of the insane asylum in which Haines died, testified that
he was admitted into the asylum on June 1, 1893, and died on
April 8, 1895, and that he was suffering from general paresis.   The
witness was shown two letters of Haines', dated March 13th and
March 17th, written to his wife, in which he said that from the
handwriting of these letters there were decided characteristics of
general paresis, but that the one written on March 13th did not
have the indication to the same degree as that written on March

17th.   He further testified that he considered that Haines had been
suffering from the disease for four or five months prior to his ad-
mission to the asylum, on June 1, 1893; that when Haines was
admitted to the asylum he had just passed through the first stage
of the disease; that in the first stage of the disease a person may
act in such a way that a person unfamiliar with his mental dis-
turbance would believe that he was sane.   There was no evidence
to show what effect the first stage of general paresis has upon a
person's ability to make a contract or to understand what he is
doing; and certainly nothing to show that on February 16th, when
this contract was made, the disease had so progressed that Haines
was not capable of making a valid contract.   At that time it would
appear that those who were nearest to him, and in constant com-
munication with him, had not noticed any evidence of mental de-
rangement or loss of mental power.   He was attending to his usual
avocations, and even those who knew him best had failed to notice
any evidence of mental disturbance.   His nephew, who lived with
him, stated that he had talked of purchasing this property for
several months prior to the execution of the contract.   Nor was
there the slightest evidence that any advantage was taken of
Haines in making the contract, or that the property was worth less
than what he had bargained to pay for it.   The contract was an
executed contract of sale.   The defendant undertook to convey the
property to Haines upon payment of the purchase price as provided
in the contract, and, as the consideration for this contract, Haines
agreed to purchase and to make a payment on account.   There was
no evidence to show that Haines exhibited any indication of in-
sanity or of mental derangement, or that the defendant had the
slightest reason to suppose that Haines was not entirely compe-
tent to make the contract and to perform its conditions.   It is
quite evident that his wife had no suspicion of Haines' incompe-
tency, for she was in the possession of the note which was deliv-
ered to the defendant, and it was in response to a telegram from
Haines to his wife, stating that he had purchased this property
and requesting that the note be sent for the purpose of making a
payment on account, that the plaintiff sent the note to Haines, and
thus Haines was enabled to deliver it to the defendant.

Upon this evidence, a verdict that at the time of the making of
this contract Haines was in such a mental condition that he was
not responsible for his acts would have been entirely unsupported.
The rule as to the responsibility of insane persons for their contracts
is well settled.   In Insurance Co. v. Hunt, 79 N. Y. 541, it was held
that, where a contract was executed upon a verbal consideration of
which the lunatic had the benefit, made by the plaintiff in good faith,
without fraud or interference, without knowledge of the insanity, and
without notice or information calling for inquiry, it was enforceable
against the lunatic.   The court, quoting with approval the remarks
of the chancellor in Elliot v. Ince, 7 De Gex, M. & G. 487, said:

"The principle of that case was very sound, viz. that an executed contract,
when parties have been dealing fairly, and in ignorance of the lunacy, shall

not afterwards be set aside. That was a decision of necessity, and a contrary doctrine would render all ordinary dealings between man and man unsafe."

In Loomis v. Spencer, 2 Paige, 158, the chancellor said:

"Although a contract of purchase, made by either [a lunatic or infant], except for necessaries, could not be enforced, yet a court of equity ought not to interfere when the infant or lunatic has actually had the benefit of the property, if the contract was made in good faith, without knowledge of the incapacity, and where no advantage had been taken of the situation of the party."

In Riggs v. Society, 84 N. Y. 335, the same principle was reaffirmed. See, also, Yauger v. Skinner, 14 N. J. Eq. 389; Hosler v. Beard (Ohio Sup.) 43 N. E. 1040. In Re Beckwith, 3 Hun, 443, the facts were entirely different, and Judge Mullen, in delivering the opinion of the court, affirmed the rule before stated, saying:

"A contract with a person not known to be of unsound mind, and who has not been found, upon a commission de lunatico inquirendo, to be insane, may be sustained if it shall be proved to have been fairly made, and without advantage being taken of the lunatic."

In that case Beckwith had been confined in a lunatic asylum for many years, and judicially declared to be insane, and a commission of his estate had been appointed; and the contract that the court refused to enforce was one for legal services made with Beckwith while in an asylum, and with full knowledge of his insanity, and of the judicial declaration that he was insane.

We think, however, that in this case there was no evidence to show that Haines was insane at the time he made this contract, so that he had not the power to contract; that the defendant had knowledge of any mental disturbance; or that there were any facts to put him upon inquiry.

There are several exceptions to rulings upon questions of evidence which are insisted upon by the plaintiff, but they are without merit. None of them relate to testimony as to Haines' mental condition at the time the contract was executed, or as to any knowledge of the defendant that would make inquiry on his part proper. The price that the defendant paid for the property when he purchased it was quite immaterial. There was no allegation that any unfair advantage was taken of Haines, or that the property was not worth the price that Haines agreed to pay for it. The remarks of the court when the witness Parker was called were not a ruling to which an exception was taken. What was said evidently related to the insanity of Haines after he returned from the South, and not at the time when the contract was made. If the plaintiff had wished to examine the witness as to Haines' condition at the time the contract was made, an intimation of that fact to the court would undoubtedly have led the court to allow the testimony, but, at any rate, there was no ruling upon evidence that was excepted to, and the witness was voluntarily withdrawn without an exception being taken. None of the other questions require notice, and we think the complaint was properly dismissed.

The judgment is therefore affirmed, with costs. All concur.